THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. COREY HAMILTON, Defendant-Appellant.

First District (4th Division)    No. 1—04—1179

Opinion filed October 27, 2005.

Michael J. Pelletier and Sean Collins-Stapleton, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (James E. Fitzgerald, Alan J. Spellberg, and Kathleen M. Kain, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GREIMAN delivered the opinion of the court:

Following a bench trial, defendant Corey Hamilton was convicted of aggravated battery to a child, aggravated domestic battery, and aggravated battery and sentenced to 25 years in prison. Defendant appeals from both his convictions and sentence, contending that the State's evidence was insufficient to support his convictions, that his sentence was excessive, that his trial counsel was ineffective, and that he was denied a fair trial when the circuit court relied on improper evidence in finding him guilty. For the reasons that follow, we affirm.

At trial, Luella Marie Maple, mother of the victim, Sauncere, defendant's daughter, testified that on February 9, 2002, defendant picked up Sauncere to spend the weekend at his mother's apartment. Sauncere did not have any injuries when she left with defendant that day. However, when Maple next saw her on February 11, 2002, at Children's Memorial Hospital, Sauncere had dark red marks on her face, a black eye, and severely blistered feet.

Dr. Daniel Leonhardt testified that he was an attending pediatrician at Children's Memorial Hospital and a member of its Child Protection Team, whereby he evaluated children whose injuries were indicative of child abuse. After testifying to his credentials without objection, Leonhardt was qualified to testify as an expert in pediatrics in general and child abuse in particular.

Dr. Leonhardt further testified that, on February 11, 2002, he was called to the emergency room to examine Sauncere on suspicion that she had suffered burns and bruising as the result of child abuse. Leonhardt observed bruises on the side of Sauncere's face and burns on her feet below the ankles. After examining Sauncere, he spoke with defendant, who had brought her to the hospital. Defendant related

that he had drawn a bath for himself at his mother's apartment that morning and left the room with the water running. Sauncere told him she had to use the bathroom and soon afterward he heard her scream and found her on the floor picking at burns on her feet.

After speaking with defendant, Dr. Leonhardt ordered X rays and a CAT scan to assess whether Sauncere had any internal injuries. Based on his examinations and social worker Emily Pandalind's interviews with defendant and with Maple, he opined that Sauncere's injuries were the result of child abuse, specifically, that her feet had been forcibly held under scalding water. Leonhardt stated that Sauncere's injuries were "classic immersion burns" in that they appeared to have been incurred simultaneously as described in medical texts and previous cases he had observed. He also opined that the bruises on Sauncere's face were the result of child abuse, specifically, multiple slaps, and could not have resulted from a fall because of their extent and their linear appearance.

Dr. Leonhardt related that in Pandalind's conversations with Maple, it was learned that Sauncere often took baths by herself and was able to step over the rim of the bathtub in Maple's home with the aid of a step stool.

On cross-examination, Dr. Leonhardt stated that he was not sure how Sauncere's toes avoided the severe burns that affected the tops of and soles of her feet, but opined that an adult likely restrained her body while holding her legs just above the ankle and immersing her feet in a tub of scalding hot water. He believed that Sauncere could not have inflicted the burns herself because she likely would have entered the tub one leg at a time, with her toes entering the water first, whereas the burns on her feet were symmetrical, indicating that they entered the water simultaneously. He did not find any injuries to Sauncere's legs or anywhere else on her body other than her face and feet. On initially examining Sauncere, he identified what he described as "splash burns" on one of Sauncere's buttocks, but later assessed them as a skin abnormality, as they did not respond to typical treatment for burn injuries.

Chicago police investigator Darryl Daley testified that on February 11, 2002, he was called to Children's Memorial Hospital to investigate the alleged abuse of Sauncere. He observed that Sauncere's feet were swollen and filled with fluid and that there was bruising on her face. Daley interviewed both Maple and Dr. Leonhardt as well as defendant. When Daley spoke with defendant, defendant stated that he had run a bath for himself, left the bathroom, heard Sauncere say she had to use the bathroom, and later heard her screaming after burning her feet in the bath.

Investigator Daley placed defendant under arrest on April 13, 2002. After hearing and indicating that he understood his *Miranda* rights, defendant agreed to speak with Daley and related that he did not know how Sauncere had incurred the bruising on her face and that he was aware that the water in his mother's apartment tended to run very hot. He also indicated that he was responsible for Sauncere's care during the time that she spent at the apartment and that his brother was sleeping at the apartment at the time Sauncere incurred her injuries.

On cross-examination, Inspector Daley stated that he inspected the bathroom in defendant's mother's apartment and found that the water temperature in the bathtub was regulated by a single handle, that the hot water ran very hot, and that the rim of the bathtub was wide enough for someone to sit on top of it. He also noted that the floor was tiled and had grout lines. He was never able to contact defendant's brother for an interview.

The State also presented several photographs of Sauncere as she appeared on February 11, 2002.

Defendant called his wife, Tanita Hamilton, who testified that on February 11, 2002, she went to defendant's mother's apartment and phoned him to let her in the front door. While she and defendant were speaking, she heard a child screaming. When she entered the apartment, she saw defendant, his brother, and Sauncere with her feet in a pot of cold water. They all went to the hospital after defendant's mother arrived.

On cross-examination, Hamilton stated that no one who was at the apartment at the time of Sauncere's injury dialed 9-1-1 and that it was she who suggested calling defendant's mother in order to transport the child to the hospital.

Defendant's mother, Brenda Tippett, testified that defendant had moved into her apartment on February 10, 2002. On February 11, 2002, defendant phoned her at work and informed her that Sauncere had burned her feet. She called her then-fiancé and they drove home and transported Sauncere to the hospital. Tippett further testified that the water in her apartment tended to get hot very quickly and that, other than the taps, there was no way to regulate the water temperature in her apartment. Her complaints to the landlord went unaddressed, and she did not inform defendant of the problem at the time he moved into the apartment.

Defendant then rested, and in response to the judge's questions, indicated to the court that he did not wish to testify in his own defense and that the decision not to testify was his own. Defendant also submitted two photographs depicting the bathroom and bathtub in Tippett's apartment.

After reviewing the evidence, which was characterized as largely circumstantial, a transcript of Dr. Leonhardt's testimony, and "recollecting [his] children" in considering how Sauncere would have likely entered the tub had she done so on her own, the trial judge concluded that Sauncere's injuries were likely not accidental, and that, because defendant was the only other person present when they occurred, he likely caused them. The court entered guilty findings on the charges of aggravated battery to a child, aggravated domestic battery, and aggravated battery.

At the sentencing hearing, defendant presented a motion for new trial, which included boilerplate language as to the lack of sufficient evidence to sustain his conviction. Defense counsel, Raymond G. Bendig, specifically argued that there was insufficient evidence to prove that defendant caused Sauncere's injuries and that she had likely caused them herself. After reconsidering the testimony of Dr. Leonhardt and the photographs in evidence, the circuit court denied the motion.

In aggravation, the State presented evidence of defendant's prior convictions for possession of a stolen motor vehicle, burglary, criminal trespass, and violation of probation in Illinois as well his conviction for burglary in Missouri. The prosecutor also argued that the nature of the immediate offense, including the age of the victim and defendant's behavior after she was injured, warranted an extended-term sentence.

In mitigation, defendant presented letters from several of his family members attesting to his good relations with Sauncere and his two other young children and argued that none of his other convictions were for violent offenses. Defendant also stated that he had disagreed with Bendig over whether he and his brother ought to testify at trial and that Bendig decided not to call him or his brother as witnesses because his family was having difficulty paying his legal fees. Defendant also tendered a letter concerning his relationship with Bendig to the court. After reviewing the letter, the circuit court found that defendant had raised issues as to Bendig's competence and continued the case to allow Bendig and the State to respond.

After reconvening, the circuit court considered defendant's letter as a motion for new trial, granted Bendig's motion to withdraw as defense counsel, and appointed a public defender to represent defendant on the motion.

In a subsequent appearance, defendant was represented by Assistant Public Defender Erin Farrell for purposes of his motion for new trial. He also filed, *pro se*, a petition for postconviction relief and a motion to dismiss the indictment. When Farrell stated that she

would *not adopt the latter two motions,* defendant indicated that he wished to represent himself on each motion.

In an affidavit, defendant's brother, David Taylor, stated that on February 11, 2002, he was at his mother's apartment, lying down in one of the bedrooms, and could hear defendant, who was in the living room, speaking on the telephone. He overheard Sauncere ask defendant if she could use the bathroom and heard defendant tell her she could. He soon heard Sauncere scream and a loud "thud" from the direction of the bathroom. He got up and ran to the bathroom while defendant ran in ahead of him. He saw Sauncere lying on the bathroom floor and noticed that the faucet in the bathtub was running. Defendant picked up Sauncere and instructed Taylor to get cold water for her feet. Taylor further attested that he had traveled from Atlanta to be present at defendant's trial in the event that he would be called to testify, that he had expected Bendig to call him as a witness, and that he had offered to give a statement to Inspector Daley, but that Daley never took one.

At the hearing on defendant's motion for new trial, Bendig testified that, during his representation of defendant, he was aware of defendant's brother, David Taylor, who defendant indicated was sleeping in another room at the time Sauncere sustained her injuries. He stated that he spoke with Taylor on several occasions and that Taylor had told him that, on February 11, 2002, he was sleeping in his mother's apartment when he was awakened by a child's screams and that he found defendant and Sauncere, who had been injured. Taylor had never related to him any of the differing assertions contained in his affidavit. Bendig further stated that he had decided not to call Taylor as a witness as a matter of trial strategy and not as a result of defendant's ability to pay his fees.

On cross-examination, Bendig stated that defendant's family was able to pay his fees during the trial and that he had interviewed Taylor on several occasions and Taylor had never made any assertions approximating what was attested in his affidavit. Bendig further stated that, in preparing for trial, he reviewed the notes and files authored by Dr. Leonhardt but he did not speak to another expert about the type of burns Sauncere suffered. He stated that he had performed extensive research of his own on immersion burns. Bendig estimated that he spent approximately 40 hours preparing for defendant's trial.

The circuit court denied defendant's motion for new trial, stating that the matters contained in Taylor's affidavit could not be believed in light of Bendig's testimony as well as Inspector Daley's testimony as to his conversations with defendant and his attempts to locate Taylor. The court also remarked that Bendig had been competent in other matters in which he had appeared before the court.

On his *pro se* motions, defendant requested that the court appoint him counsel other than a public defender to argue. The circuit court denied the request and denied the motions, finding that they were frivolous and without merit.

The court continued the sentencing hearing, at which defendant's uncle and mother testified as to his good relations with and good conduct in the presence of Sauncere, his other children, and the children of others. After considering all factors in aggravation and mitigation, the circuit court sentenced defendant to a Class X term of 25 years in prison on the count of aggravated battery to a child. The court denied defendant's motion to reconsider. Defendant now appeals.

Defendant initially challenges the sufficiency of the State's evidence to sustain his convictions, arguing that the expert testimony of Dr. Leonhardt was untenable because it was contrary to common sense and failed to account for essential foundational information.

In assessing the sufficiency of the evidence to sustain a defendant's conviction, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Smith*, 185 Ill. 2d 532, 541 (1999). We may not substitute our judgment for that of the trial court and will not reverse a conviction unless the evidence is so improbable or unsatisfactory as to create a reasonable doubt of the defendant's guilt. *People v. Lundy*, 334 Ill. App. 3d 819, 825 (2002).

Defendant argues that Dr. Leonhardt's expert opinion testimony was invalid because it lacked the foundational knowledge necessary to support his conclusion that defendant had inflicted Sauncere's injuries, specifically, the dimensions of the respective bathtubs in Maple's home and in Tippett's apartment and the length of the child's inseam. Defendant relies on this court's decision in *People v. Wilhoite*, 228 Ill. App. 3d 12 (1991), where we held that an expert witness's testimony is of no weight and must be disregarded where it fails to consider factors essential to support its conclusions.

The State responds that defendant has waived this issue for purposes of appeal by failing to object to the admission of Dr. Leonhardt's expert opinion at trial and failing to incorporate the objection into a posttrial motion. See *People v. Bush*, 214 Ill. 2d 318, 332 (2005). Defendant counters that his argument cannot be waived because it is a challenge to the sufficiency of the evidence, not its admissibility.

■ Generally, a defendant's challenge to the foundation for a particular piece of evidence is considered an attack on its admissibility rather than an attack on its sufficiency to uphold a conviction and is

thus subject to the ordinary rules of waiver. *People v. Woods*, 214 Ill. 2d 455, 473 (2005). In *Woods*, the Illinois Supreme Court reasoned that the chain of custody over a purported controlled substance establishes a foundation for such evidence as reliable and admissible; it does not function as proof of the existence of an element of the crime. Therefore, a defendant's challenge to the foundation for the State's evidence does not function as a challenge to its sufficiency to support a conviction and is therefore not exempt from waiver. *Woods*, 214 Ill. 2d at 473.

■ We find that the State's waiver argument is misplaced in this instance. In challenging the foundational aspects of evidence—whether they be the chain of custody or the functioning of an expert witness's testing equipment—on appeal after stipulating to them at trial or otherwise failing to challenge them, a defendant deprives the State of the opportunity to remedy any such discrepancies that were not made apparent at trial. See *Woods*, 214 Ill. 2d at 475. In this case, defense counsel repeatedly pointed out that Dr. Leonhardt was unaware of the very factors that defendant now proffers on appeal. Moreover, the court in *Wilhoite* did not rule that the questionable testimony of the State's expert witness was inadmissible for lack of foundation, but only that it was entitled to little if any evidentiary weight in light of the fact that the expert's conclusions were for the most part negated by his failure to consider essential factors in arriving at them and by the very scientific text on which he purported to base them. *Wilhoite*, 228 Ill. App. 3d at 21-22. Accordingly, we conclude that waiver is inapplicable in this instance and we will consider the merits of defendant's argument.

■ Defendant argues that Dr. Leonhardt's ignorance of the dimensions of the bathtub in which Sauncere was purported to have bathed and of the exact length of her legs detracts from his expert opinion that someone held the child and deliberately immersed her feet in scalding water, and in effect makes defendant's own theory of the case more plausible, specifically, that Sauncere climbed onto the edge of the bathtub and placed her own feet in the water simultaneously, incurring severe burns, and fell backward onto the floor, causing the bruises to her face. Defendant contends that Leonhardt's conclusions without knowledge as to those factors rendered his opinion contrary to common sense and that it therefore could not support defendant's conviction for aggravated battery to a child. Defendant draws parallels to our holding in *Wilhoite*, where we found that the opinion testimony of the State's expert witness in rebutting the defendant's insanity defense was fatally undermined and could not support the State's theory of the case because the witness diagnosed the defendant's condi-

tion at the time of the offense as cannabis intoxication without ascertaining the amount she had used that night or on past occasions, because he did not examine the defendant at a time in close proximity to the time she had purportedly used cannabis, and because his diagnosis was contravened by the conclusions of the defendant's three experts and was contradictory to that reported in the very scientific text on which he purported to base it. *Wilhoite*, 228 Ill. App. 3d at 21-25.

We find the facts of this case distinguishable from those presented in *Wilhoite*. Here, the State's witness, Dr. Leonhardt, was qualified as an expert in cases of child abuse, having personally observed several prior instances of that offense. He personally examined Sauncere soon after she incurred her injuries and based his diagnosis on his own experience and training. Defendant proffered no contrasting expert testimony of his own and pointed to no authoritative texts that were contradictory to or otherwise undermined Leonhardt's opinion. The only contrasting evidence defendant offered at trial and again on appeal is hypotheticals and suppositions as to how Sauncere could have sustained her injuries. A trier of fact is by no means required to confer more weight to a defendant's theory of the case merely because it is a possible alternative to the State's theory; it is the function of the trier of fact, and not a reviewing court, to weigh any discrepancies or inconsistences in the evidence. *People v. Gomez*, 236 Ill. App. 3d 283, 294 (1992); *People v. Brown*, 243 Ill. App. 3d 170, 175 (1993).

Furthermore, the issue in *Wilhoite* centered around the validity of a proffered defense rather than the sufficiency of the evidence to sustain the defendant's conviction. In proffering an insanity defense, a defendant must prove by a preponderance of the evidence that he was insane at the time of the offense he was alleged to have committed (*Wilhoite*, 228 Ill. App. 3d at 19-20), whereas the State must prove the elements of a crime beyond a reasonable doubt (*Smith*, 185 Ill. 2d at 541). Considering the disparate procedural posture and respective evidentiary standards between this case and *Wilhoite*, we find defendant's reliance on that case misplaced and therefore reject his arguments on appeal. Finding no valid reason for the circuit court to disregard Dr. Leonhardt's expert testimony, we conclude that the court was not irrational in convicting defendant.

■Defendant next contends that the circuit court's imposition of a 25-year prison term was excessive and demonstrated a failure to comply with the constitutional mandate that sentences must be determined with the objective of restoring the accused to useful citizenship. He argues that the sentencing factors in his favor, such as the extent of Sauncere's injuries, her prompt receipt of medical atten-

tion, his previous caretaking activities, his nonviolent criminal background, his previous difficulties with drug addiction, his efforts to educate himself and support his children, as well as his being a victim of child abuse himself, indicate that the sentence imposed by the circuit court was excessive.

A sentencing decision is within the sound discretion of the circuit court which reviewing courts will not disturb absent an abuse of that discretion. *People v. Rogers*, 197 Ill. 2d 216, 223 (2001). It is not this court's function to reweigh the relevant sentencing factors or substitute our judgment for that of the circuit court. *People v. Pittman*, 93 Ill. 2d 169, 178 (1982). Where a sentence falls within statutory guidelines, it is presumed to be proper and will be overturned only on an affirmative showing that it departs from the intent of the law or violates constitutional guidelines. *People v. Boclair*, 225 Ill. App. 3d 331, 335 (1992).

Defendant was convicted of aggravated battery of a child, which is categorized as a Class X felony (720 ILCS 5/12—4.3(b) (West 2002)), and was sentenced to a term of 25 years in prison. Class X offenses carry prison terms ranging from 6 to 30 years. 730 ILCS 5/5—8—1(a)(3) (West 2002). Accordingly, defendant's sentence did not exceed statutory guidelines.

It is readily apparent from the trial and sentencing record that the circuit court considered all factors presented in both aggravation and mitigation. The circuit court heard testimony and read letters from defendant's relatives as to his relations with his children and his efforts to support them. The court also heard the testimony from Dr. Leonhardt as to the excruciating nature of Sauncere's injuries and the painful and arduous therapy she would have to undergo in order to heal. The court also had ample evidence of defendant's multiple convictions in multiple jurisdictions, which, if anything, militate against a finding of rehabilitative potential. In imposing the sentence and denying defendant's motion to reconsider it, the trial judge emphasized his concern for the likelihood that defendant would likely commit the same offense again and his desire that the sentence serve as a deterrent to other potential offenders.

On the record before us, we do not detect an instance where the circuit court ignored or gave improper weight to any factors it was required to consider in imposing sentence. See 730 ILCS 5/5—5—3.1, 5—5—3.2 (West 2002). Accordingly, we find that the court did not abuse its discretion.

■ Defendant next contends that he was denied effective assistance of trial counsel in that Bendig failed to investigate and present matters essential to his defense. Specifically, defendant alleges that Bendig

was incompetent for failing to present the dimensions of the bathtubs in Maple's home and Tippett's apartment, the temperature of the water in Tippett's apartment, the length of Sauncere's legs, or the testimony of another expert to contrast that of Dr. Leonhardt.

In order to demonstrate ineffective assistance of counsel, a defendant must establish that his attorney's performance was so deficient that it fell below an objective standard of reasonableness and that the defendant was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984). The defendant bears the burden of overcoming a strong presumption in favor of finding that counsel's advocacy was effective. *People v. Albanese*, 104 Ill. 2d 504, 526 (1984). Specifically, the defendant must show that counsel made errors so egregious and counsel's performance was so deficient that those deficiencies prejudiced the defendant so as to deprive him of a fair trial with a reliable result. *People v. Caballero*, 126 Ill. 2d 248, 259-60 (1989). In resolving the issue of counsel's performance, reviewing courts examine the totality of counsel's conduct, not isolated incidents. *People v. Mitchell*, 105 Ill. 2d 1, 15 (1984).

Generally, decisions concerning which witnesses to call and which evidence to present on a defendant's behalf are viewed as matters of trial strategy, which are generally immune from claims of ineffective assistance. *People v. Munson*, 206 Ill. 2d 104, 139-40 (2002). Neither mistakes in trial strategy nor the benefit of another attorney's hindsight is sufficient to demonstrate that the trial lawyer was objectively incompetent. *People v. Young*, 341 Ill. App. 3d 379, 383 (2003). Counsel's failure to call an expert witness is not *per se* ineffective assistance, even where doing so may have made the defendant's case stronger, because the State could always call its own witness to offer a contrasting opinion. See *People v. Popoca*, 245 Ill. App. 3d 948, 953-54 (1993).

At trial, Bendig subjected Dr. Leonhardt to extensive and thorough cross-examination, making it very apparent to the court that Leonhardt was unaware of the dimensions of the respective bathtubs and the exact length of Sauncere's legs. Bendig was also very persistent and thorough in questioning Leonhardt as to the possibility that Sauncere could have sat on edge of the bathtub and swung her feet into the water, thereby incurring her severe burns. Bendig also questioned Inspector Daley and Tippett as to tendency of the water in Tippett's apartment to run overly hot. While Bendig may not have presented the exact dimensions of the bathtubs or Sauncere's legs, Dr. Leonhardt's ignorance of those facts was readily apparent. Moreover, while he may not have recorded and presented the exact temperature

of the hot water in Tippett's apartment, Bendig elicited testimony from two witnesses who stated that it ran unusually hot. Accordingly, we cannot find that Bendig was deficient in not presenting these pieces of information.

Moreover, we cannot find that Bendig was ineffective for failing to call an expert witness to testify on the nature of Sauncere's injuries and their likely origin. Doing so would have been a matter of trial strategy which could have either helped defendant's case or hurt it. Bendig made it clear that he was diligent in investigating Dr. Leonhardt's notes and reports and thoroughly challenged his conclusions in an extensive cross-examination. Had defendant called his own expert witness, with qualifications and experience similar to those of Leonhardt, the circuit court would not have been under any automatic obligation to disregard Leonhardt's testimony or defer to that of defendant's expert and thus find for acquittal. Because the testimony of an expert witness in favor of defendant would not have made his conviction any less likely, we cannot find that Bendig's representation was ineffective. See *People v. Pisani*, 180 Ill. App. 3d 812, 819-20 (1989). Accordingly, we reject defendant's arguments as to his trial counsel's performance.

■ Defendant lastly claims that he was denied due process and a fair trial where the circuit court relied on evidence outside the record in issuing its rulings. Specifically, defendant argues that the trial judge's recollection of his own children and how they bathed in concluding that Sauncere likely did not simultaneously immerse her own feet into scalding hot water improperly led to defendant's conviction. He also alleges that the judge's personal knowledge of Bendig's past performance improperly influenced the judge's finding that Bendig was not ineffective in representing defendant after defendant raised the issue in his motion for a new trial.

Ordinarily, because defendant did not object to the judge's remarks during the proceedings below or raise them as issues in subsequent motions, this contention would be waived for purposes of appellate review. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). But where a claim of error involves judicial conduct, reviewing courts will relax the waiver rule and review the trial court's conduct for plain error. *People v. Dunn*, 326 Ill. App. 3d 281, 286 (2001). However, even if the error is plain, such an error is harmless where we can safely conclude that the proceedings below would have produced the same result had the error not occurred. *People v. Traina*, 230 Ill. App. 3d 149, 154 (1992). For a judge's comments to constitute reversible error, the defendant must show that such remarks were prejudicial and that defendant suffered harm as a result. *People v. Campbell*, 252 Ill. App. 3d 624, 631 (1993).

In a bench trial, a judge's determination based on his own private knowledge, that is untested by cross-examination or the rules of evidence, amounts to a denial of due process. *People v. Wallenberg*, 24 Ill. 2d 350, 354 (1962). Reversal is warranted where the defendant was not informed of the facts of which the court took notice, did not know the evidence upon which his conviction was based, and was unable to dispute the truth of the facts on which the court relied. *People v. Smith*, 176 Ill. 2d 217, 238 (1997). Nevertheless, we will uphold a court's judgment where there is no indication that the judge considered any evidence that was not produced at trial. *People v. Nelson*, 58 Ill. 2d 61, 67-68 (1974).

Considering the record before us, as well as the fact that we have already determined that the State's evidence was sufficient to support defendant's conviction, we find that the trial judge's remarks as to his knowledge of his own children were not prejudicial. Defendant was well aware of the State's theory of the case and of Dr. Leonhardt's opinion testimony that a child of Sauncere's age and development would likely have entered a bathtub one leg at a time rather than with both feet simultaneously, as defendant argued at trial, and that she often did so at her mother's house.

Defendant also argues that the trial judge relied on his own recollections of Bendig's performance in other cases in denying his motion for new trial on grounds of ineffective assistance. Defendant relies on our supreme court's decision in *People v. Steidl*, 177 Ill. 2d 239 (1997), where the court held that a trial judge's remarks concerning trial counsel's performance in other criminal defense cases had no relevance to counsel's effectiveness in that particular case and that the trial judge erred in relying in his own personal knowledge in denying the defendant's request for an evidentiary hearing on his postconviction claims of ineffective assistance of trial counsel. *Steidl*, 177 Ill. 2d at 265-66. The judge and trial counsel had also been law partners prior to the defendant's trial. *Steidl*, 177 Ill. 2d at 263.

While considering information outside the record is normally prejudicial and grounds for reversal, we find that, in this case, the trial judge's reliance on Bendig's other appearances in issuing his ruling on defendant's claim of ineffective assistance did not amount to that exhibited in *Steidl*. In that case, in denying the defendant's request for an evidentiary hearing on his claim of ineffective assistance, the trial judge referred exclusively to trial counsel's performance in other appearances and not to counsel's performance in the defendant's trial in finding that counsel was not ineffective. See *Steidl*, 177 Ill. 2d at 265-66. Here, the trial judge was explicit in stating that he relied on Bendig's testimony concerning his conversations

with defendant's brother and his working relationship with defendant's family. While the judge's remark that Bendig had been competent in other proceedings before the court may not have been proper, and considering our own determination that Bendig did not render ineffective assistance, we find that the inclusion of this outside knowledge did not affect the judge's ruling and was therefore not prejudicial. Accordingly, we reject defendant's claim of improper reliance on evidence absent from the record.

For the reasons set forth above, we affirm the judgment of the circuit court.

Affirmed.

CAMPBELL and MURPHY, JJ., concur.