McMILLAN, Judge.
 

 The appellant, Aundra Marshall, was convicted of three counts of capital murder for murdering Clarence “Rick” Kile and Allison Kile during the course of a kidnapping and pursuant to one act or pursuant to one course of conduct, violations of §§ 13A-5-40(a)(l) and (a)(10), Ala.Code 1975. The jury recommended, by a vote of 11 to 1, that Marshall be sentenced to death. The circuit court followed the jury’s recommendation and sentenced Marshall to death.
 

 The State’s evidence tended to show that in the early morning hours of February 6, 2004, Lt. Tyrone Banks, a firefighter with the Brighton Fire Department, was dispatched to Watts Street in Birmingham. When he arrived, he found an automobile on fire. He testified that when the firefighters extinguished the fire they opened all the doors, the hood, and the
 
 *833
 
 trunk of the vehicle. He said that when they opened the trunk they discovered the bodies of two individuals — a male and a female. Both bodies had their hands tied behind their backs with electrical cords. Banks notified other emergency personnel. The victims were subsequently identified as Rick Kile and Allison Kile.
 

 Dr. Gregory G. Davis, Jefferson County medical examiner, testified that both victims died of assault and “inhalation of products of combustion” — both had lethal levels of carbon monoxide in their blood. Both bodies, he said, were badly charred and blistered. Rick’s body had bruises around his neck, consistent, the medical examiner said, with blunt-force trauma or strangulation. Allison’s body also had bruising around the neck and her hyoid bone was broken, injuries Dr. Davis said, that were consistent with strangulation. Dr. Davis testified that the victims were alive when they were set on fire.
 

 A fire-debris scientist, Sheree Brooks Wells, testified that an accelerant was present in the car and on the victims’ clothing. Another forensic expert, Mac McAllister, testified that the electrical cords that were removed from the victims’ bodies were consistent with the wires cut from a fan and a heater he had been given to process. The fan and heater had been recovered from a residence on Jesse Owens Avenue.
 

 Oliver Taylor testified to the events leading up to the Kiles’ murders. He said that on the evening of February 5, 2004, he went to a house located on Jesse Owens Avenue in Brighton — a house frequented by individuals seeking to use or purchase drugs. Taylor testified that Marshall and Dionne Eatmon
 
 [1]
 
 arrived at the house sometime after he arrived. He testified that when Rick Kile arrived, Marshall and Rick got into a fight. Rick owed Marshall $200 for drugs he had purchased from Marshall. Rick’s wife, Allison, heard the commotion and walked into the house to see what was happening. Marshall forced Rick and Allison onto a sofa in the living room and Rick and Marshall continued arguing. At one point, Eatmon hit Rick on the leg with a metal bar, and Rick yelled that he had broken his leg. Marshall asked Taylor to get him a bottle of kerosene. Taylor said that he went to the kitchen, got a bottle, filled it with kerosene, and gave it to Marshall. Marshall then asked him for his knife but apparently changed his mind and said “follow me.” Taylor followed Marshall into the kitchen where Marshall told Taylor to cut the electrical cord off a fan. A few minutes later, Taylor saw Rick and Allison tied up, with their hands tied behind their backs. Taylor said that Marshall and Eatmon forced the Kiles into the trunk of a car. Marshall drove; Eatmon was in the passenger seat. Some of Taylor’s testimony was corroborated by two other individuals who were in the house when Rick and Allison arrived.
 

 Another witness, Mattie Thomas, a resident of Watts Street, testified that she heard a loud noise around 4:00 a.m. on the morning of February 6, 2004, and went to her door to see what was happening. She testified that she saw a car on fire and two black males running from the car. Thomas said that one of her neighbors stopped the two males. Another resident of Watts Street, William White, testified that Marshall knocked on his door, told him that his car had broken down, and asked for a ride. Sidney Nelson, who was at White’s house, gave Marshall and Eatmon a ride. Sidney Nelson testified that the men gave him
 
 *834
 
 $5.00 and he took them to the “Super Highway.”
 

 Marshall presented an alibi defense. Ronald Smith, owner of the R & B Club and a Brighton police officer, testified that on the evening of February 5, 2004, Marshall was at his club from midnight until 3:00 or 3:30 a.m. Marshall testified in his own defense that on the evening of the murders he was at Smith’s club from midnight until 4:30 a.m., and that he had car trouble. He further testified that the State’s witnesses all had motives to lie. Marshall denied having anything to do with the Kiles’ murders.
 

 The jury chose to believe the State’s version of the events surrounding the Kiles’ murders and convicted Marshall of three counts of capital murder. A separate sentencing hearing was held before the same jury. The jury recommended, by a vote of 11 to 1, that Marshall be sentenced to death. After a separate sentencing hearing, the circuit court sentenced Marshall to death. This appeal, which is automatic in a case involving the death penalty, followed. See § 13A-5-53, Ala.Code 1975.
 

 Standard of Review
 

 According to Rule 45A, Ala.R.App.P., this Court must review the trial proceedings for any plain error. Rule 45A, Ala. R.App.P., states:
 

 “In all cases in which the death penalty has been imposed, the Court of Criminal Appeals shall notice any plain error or defect in the proceedings under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial right of the appellant.”
 

 As we stated in
 
 Hall v. State,
 
 820 So.2d 113 (Ala.Crim.App.1999):
 

 “The standard of review in reviewing a claim under the plain-error doctrine is stricter than the standard used in reviewing an issue that was properly raised in the trial court or on appeal. As the United States Supreme Court stated in
 
 United States v. Young,
 
 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), the plain-error doctrine applies only if the error is ‘particularly egregious’ and if it ‘seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.’ See
 
 Ex parte Price,
 
 725 So.2d 1063 (Ala.1998), cert. denied, 526 U.S. 1133, 119 S.Ct. 1809, 143 L.Ed.2d 1012 (1999);
 
 Burgess v. State,
 
 723 So.2d 742 (Ala.Cr.App.1997), aff'd, 723 So.2d 770 (Ala.1998), cert. denied, 526 U.S. 1052, 119 S.Ct. 1360, 143 L.Ed.2d 521 (1999);
 
 Johnson v. State,
 
 620 So.2d 679, 701 (Ala.Cr.App.1992), rev’d on other grounds, 620 So.2d 709 (Ala.1993), on remand, 620 So.2d 714 (Ala.Cr.App.), cert. denied, 510 U.S. 905, 114 S.Ct. 285, 126 L.Ed.2d 235 (1993).”
 

 820 So.2d at 121-22.
 

 I.
 

 Marshall first argues that the circuit court erred in allowing the State to present evidence that Rick Kile had filed a police report against Marshall. He asserts that the evidence violated Rule 404(b), Ala. R.Evid., because it presented evidence of other bad acts that Marshall had committed and was therefore inadmissible.
 
 [2]
 

 
 *835
 
 Marshall testified in his own defense that he did not know Rick or Rick’s wife. The following then occurred when the State cross-examined Marshall:
 

 “[Prosecutor]: Can you explain to me, then, how Clarence Ricky Kile was able to make a police report against Aundra Marshall two weeks before this?
 

 “[Marshall]: No, I can’t explain that.” (R. 503.) This is the entire discussion concerning the police report that was presented to the jury.
 

 Prior to the State’s cross-examining Marshall, a discussion was held concerning the admissibility of the police report. The State asserted that it was relevant to impeach Marshall’s credibility because he had testified several times that he did not know Rick Kile. Apparently, the circuit court did not allow the actual police report to be admitted into evidence but allowed the State to mention the report to Marshall on cross-examination.
 

 Rule 611(b), Ala.R.Evid., states, in pertinent part: “The right to cross-examine a witness extends to any matter relevant to any issue and to matters affecting the credibility of the witness .... ” The Alabama Supreme Court in
 
 Ex parte Deardorff,
 
 [Ms. 1040163, January 4, 2008],
 
 *
 
 commented on the scope of Rule 611(b) and stated:
 

 “The scope of cross-examination in Alabama is quite broad. Ala. R. Evid. 611(b). This means that any question may be asked on cross-examination that is relevant either to any substantive issue in the case or to the witness’s credibility. See Ala. R. Evid. 611(b), Advisory Committee’s Notes. The trial court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence. Ala R. Evid. 611(a).”
 

 As the United States Supreme Court stated in
 
 Davis v. Alaska,
 
 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974):
 

 “Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness’ story to test the witness’ perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness.”
 

 415 U.S. at 316, 94 S.Ct. 1105. “‘The latitude and extent of cross-examination, of necessity, is a matter within the sound discretion of the trial court, and, in the absence of prejudicial abuse, it is not reviewable on appeal.’
 
 Turner v. State,
 
 289 Ala. 97, 100, 265 So.2d 883 (1972).”
 
 Ashurst v. State,
 
 462 So.2d 999, 1008-09 (Ala. Crim.App.1984).
 

 First, we do not agree with Marshall’s assertion that the above testimony was evidence of prior bad acts committed by Marshall. The admitted testimony was limited to the fact that Rick Kile had filed a report against Marshall. The jury was not informed of the reason for the police report or the contents of the report.
 

 Moreover, we agree with the circuit court that the fact that a police report had been made showed that Marshall had had
 
 *836
 
 some previous contact with Rick Kile and tended to impeach Marshall’s credibility. “Any fact tending to discredit the testimony of an adverse witness is always relevant and material.”
 
 Mickle v. State,
 
 226 Ala. 616, 617, 148 So. 319, 320 (1933). Thus, we hold that the circuit court did not abuse its considerable discretion in allowing the State to reference the police report in its cross-examination of Marshall.
 

 Marshall also argues that the police report was hearsay. Rule 801(c), Ala. R.Evid., defines hearsay as “a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” Indeed, the contents of the report were never admitted into evidence.
 

 For the above reasons, we find no reversible error in the circuit court’s ruling.
 

 II.
 

 Marshall next argues that the circuit court erred in refusing to give three of his requested jury instructions.
 

 “ ‘The trial court is vested with broad discretion in formulating its charge, so long as it accurately reflects the law.’ ”
 
 Powers v. State,
 
 963 So.2d 679, 691 (Ala. Crim.App.2006), (quoting
 
 Clark v. State,
 
 621 So.2d 309, 324 (Ala.Crim.App.1992)). See also
 
 Williams v. State,
 
 795 So.2d 753, 780 (AIa.Crim.App.1999). “When reviewing a trial court’s jury instructions, we must view them as a whole, not in bits and pieces, and as a reasonable juror would have interpreted them.
 
 Ingram v. State,
 
 779 So.2d 1225 (Ala.Cr.App.1999).”
 
 Johnson v. State,
 
 820 So.2d 842, 874 (Ala.Crim. App.2000). “ ‘The refusal of a requested written instruction, although it is a correct statement of the law, shall not be cause for reversal on appeal if it appears that the same rule of law was substantially and fairly given to the jury in the court’s oral charge or in other charges given at the request of the parties.’ ”
 
 Adams v. State,
 
 659 So.2d 224, 228 (Ala.Crim.App.1994), quoting Rule 21.1, Ala.R.Crim.P.
 

 A.
 

 Marshall first argues that the circuit court erred in refusing to give his requested charge number 11. This charge stated:
 

 “The court charges the jury that upon circumstantial evidence, there should not be conviction unless it excludes every reasonable hypothesis than that of the guilt of the accused. No matter how strong may be the circumstance, if they can be reconciled with the theory that the defendant is innocent, then the guilt of the accused is not shown by that full measure of proof the law requires.”
 

 (C.R. 90-91.)
 

 Marshall made the following objection after the circuit court charged the jury:
 

 “My next objection is, I object to the Court’s refusing to give my requested jury charge number 11....
 

 “That is a correct statement of law. And I believe my client was prejudiced by the Court’s refusal to give it.”
 

 (R. 587.) We have held that: “The ground that a jury instruction is a correct statement of the law is insufficient to preserve an objection to the trial court’s refusal to give the instruction.”
 
 Knight v. State,
 
 710 So.2d 511, 513 (Ala.Crim.App.1997). See also
 
 Ex parte R.D.W.,
 
 773 So.2d 426 (Ala. 2000). Thus, we review this claim for plain error. See Rule 45A, Ala.R.App.P.
 

 The circuit court gave the following instruction on circumstantial evidence:
 

 “Now, ladies and gentlemen, I will charge you that when the evidence relied on for conviction is circumstantial, the chain of circumstances must be com-
 
 *837
 
 píete and of such character as to convince beyond a reasonable doubt. And if the circumstances as proven fail to convince you beyond a reasonable doubt that the defendant is guilty, then you cannot convict the defendant.
 

 “I would also charge — I would also charge you that in deciding whether or not to accept circumstantial evidence as proof of facts in question, you must be satisfied first that the testimony of the witness who is presenting the circumstantial evidence is truthful and accurate, and second, that this existence of the facts in question — of the facts that the witness testifies to leads to the conclusion that the facts in question also happened.
 

 “Now, ladies and gentlemen, in other words, after considering all of the evidence in this case, if you have a doubt about the defendant’s guilt, and that doubt has a reason based on the evidence, a lack of evidence, or any part of the evidence, then you should acquit the defendant.
 

 “Circumstantial evidence, I told you, is evidence which tends to prove a fact by proving other events or circumstances which are usually or always attended by the facts sought to be established. With either direct or circumstantial evidence, you must be convinced of the defendant’s guilt beyond a reasonable doubt. No greater degree of certainty or proof is required where the evidence is circumstantial than where it is direct. The test of the sufficiency of circumstantial evidence is whether the circumstances satisfy the jury beyond a reasonable doubt of the guilt of the defendant; that is, whether they are incapable of an explanation upon any reasonable hypothesis consistent with the innocence of the defendant.
 

 “Upon circumstantial evidence, there should not be a conviction unless it excludes every other reasonable hypothesis than that of the guilt of the accused.”
 

 (R. 574-83.)
 

 We note that the Alabama Supreme Court in
 
 Ex parte Carter,
 
 889 So.2d 528, 533 (Ala.2004), held that if a court had given an instruction on reasonable doubt it is not required to also give an instruction on circumstantial evidence. The Supreme Court stated: “Although a trial court may give a circumstantial-evidence instruction if it finds the instruction appropriate or helpful in a particular case, a trial court is not required to give the jury such an instruction merely because all of the State’s evidence in a criminal case is circumstantial.” 889 So.2d at 533.
 

 Here, the circuit court properly defined circumstantial evidence and correctly instructed the jury on the law concerning the burden of proof when the evidence is circumstantial. The circuit court gave a charge substantially like the charge that Marshall requested; thus, we find no error, much less plain error, in the circuit court’s refusal to give Marshall’s requested charge number 11.
 

 B.
 

 Marshall next argues that the circuit court erred in failing to give his requested charge number 13. This charge stated:
 

 “If any or all of the witnesses for the State have exhibited or admitted bias, prejudice, anger, or ill will against the defendant or from all of the evidence in the case, if you find such bias, prejudice, anger, or ill will on the part of all or any of the State’s witnesses, and if these things, when considered by you in connection with all of the other evidence in the case create in your mind a reason
 
 *838
 
 able doubt of the defendant’s guilt, you should acquit him.”
 

 (C.R. 91.)
 

 The court gave the following instruction on the credibility of witnesses:
 

 “The law says that you are the sole ... judges of the credibility or believability of witnesses who testified. You must consider and weigh the testimony of each witness and give it such weight as, in your judgment, it is entitled to. The matter of the credibility of a witness; that is, whether or not — whether his or her testimony is believable and accurate as a whole or in part is solely for your determination.
 

 “I will mention some of the factors which might bear on that determination:
 

 “Whether the witnesses have any interest and outcome in the case or have friendship or animosity toward other persons concerned in the case;
 

 “The behavior of the witness on the witness stand and his or her demeanor, his or her manner of testifying;
 

 “And whether he or she shows any bias or prejudice which might color his or her testimony;
 

 “The accuracy of his or her memory and recollection;
 

 “His or her ability and opportunity to acquire knowledge of or to observe the matters concerning about which he or she testified;
 

 “The consistency or inconsistency of his or her testimony as well as its reasonableness or unreasonableness in light of all of the evidence in the case.”
 

 (R. 576-77.)
 

 “The record clearly indicates that the trial court’s charge completely addressed the subject of witness credibility and bias; therefore, there was no error in refusing to give the requested instructions.”
 
 Smith v. State,
 
 838 So.2d 413, 453 (Ala.Crim.App. 2002). See also
 
 Walters v. State,
 
 585 So.2d 206 (Ala.Crim.App.1991). Thus, no error occurred here.
 

 C.
 

 Marshall last argues that the circuit court erred in failing to give his requested charge number 14. This charge stated:
 

 “If the jury finds the evidence in this case as reasonably permitting either of two conclusions, one of innocence and the other of guilt, the jury should, of course, adopt the one of innocence.”
 

 (C.R. 91.)
 

 In objecting to the court’s failure to give this instruction, Marshall merely stated that the charge was a correct statement of law. Thus, we review this claim for plain error. See
 
 Knight,
 
 supra, and Rule 45A, Ala.R.App.P.
 

 The circuit court gave the following instructions on the degree of proof necessary to convict:
 

 “Now, ladies and gentlemen of the jury, the Court charges the jury that after looking at all of the evidence in this case and carefully considering it fully, your minds are left in such a state of uncertainty that you cannot say beyond a reasonable doubt that the defendant is guilty of the offense charged, then this is such a doubt as would entitle the defendant to an acquittal, and you should so find.
 

 “The Court further charges the jury that if you find from this evidence that the circumstances in this case only lead to a suspicion of the guilt of the defendant, then, in that event, you cannot convict the defendant.
 

 [[Image here]]
 

 “Now, ladies and gentlemen, in other words, after considering all of the evi
 
 *839
 
 dence in this case, if you have a doubt about the defendant’s guilt, and that doubt has a reason based on the evidence, a lack of evidence, or any part of the evidence, then you should acquit the defendant.”
 

 (R. 562-76.)
 

 First, the requested charge was confusing. As we stated in
 
 Ward v. State,
 
 610 So.2d 1190,1194 (Ala.Crim.App.1992):
 

 “When requested charges are either fairly and substantially covered by the trial judge’s oral charge or are confusing, misleading, ungrammatical, not predicated on a consideration of the evidence, argumentative, abstract, or a misstatement of the law, the trial judge may properly refuse to give such charges.
 
 Ex parte Wilhite,
 
 485 So.2d 787 (Ala. 1986).”
 

 Also, the circuit court’s instructions substantially covered the point of law requested by Marshall; thus, the circuit court did not commit reversible error in declining to give the requested jury instruction. See
 
 Smith v. State,
 
 supra.
 

 III.
 

 Marshall next argues that the circuit court erred in denying his motion for a judgment of acquittal because, he argues, the State failed to prove its capital-murder case beyond a reasonable doubt.
 

 The circuit court stated the following when denying the motion: “I am looking at the evidence in the light most favorable to the State; I think the case should move forward to the jury. And I deny the motion for judgment of acquittal.” (R. 438.)
 

 “ ‘ “In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.” ’
 
 Ballenger v. State,
 
 720 So.2d 1033, 1034 (Ala.Crim.App.1998), quoting
 
 Faircloth v. State,
 
 471 So.2d 485, 488 (Ala.Crim. App.1984), aff'd, 471 So.2d 493 (Ala. 1985). ‘ “The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.” ’
 
 Nunn v. State,
 
 697 So.2d 497, 498 (Ala.Crim.App. 1997), quoting
 
 O’Neal v. State,
 
 602 So.2d 462, 464 (Ala.Crim.App.1992). ‘ “When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court’s decision.’”
 
 Farrior v. State,
 
 728 So.2d 691, 696 (Ala.Crim.App. 1998), quoting
 
 Ward v. State,
 
 557 So.2d 848, 850 (Ala.Crim.App.1990). ‘The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is
 
 legally
 
 sufficient to allow submission of an issue for decision [by] the jury.’
 
 Ex parte Bankston,
 
 358 So.2d 1040, 1042 (Ala.1978).
 

 “ ‘The trial court’s denial of a motion for judgment of acquittal must be reviewed by determining whether there was legal evidence before the jury at the time the motion was made from which the jury by fair inference could find the defendant guilty.
 
 Thomas v. State,
 
 363 So.2d 1020 (Ala. Cr.App.1978). In applying this standard, this court will determine only if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt.
 
 Willis v. State,
 
 447 So.2d 199 (Ala.Cr.App.1983). When the evidence raises questions of fact for the jury and such evidence, if believed, is
 
 *840
 
 sufficient to sustain a conviction, the denial of a motion for judgment of acquittal does not constitute error.
 
 McConnell v. State,
 
 429 So.2d 662 (Ala.Cr.App.1983).’ ”
 

 Gavin v. State,
 
 891 So.2d 907, 974 (Ala. Crim.App.2003) (quoting
 
 Ward v. State,
 
 610 So.2d 1190, 1191 (Ala.Crim.App.1992)).
 

 Marshall was indicted for murdering Rick Kile and Allison Kile pursuant to one act and during the course of a kidnapping. According to § 13A-5-40(a)(10), Ala.Code 1975, the State was required to prove that “two or more persons [were] murdered by the defendant by one act or pursuant to one scheme or course of conduct.” Pursuant to § 13A-5-40(a)(l), Ala.Code 1975, the State was required to prove that the murders occurred “during a kidnapping in the first degree or an attempt thereof .... ” According to § 13A-6-43, Ala.Code 1975, a person commits the crime of kidnapping in the first degree if: “[H]e abducts another person with intent to ... (4) [i]nflict physical injury upon him .... ”
 

 Clearly, the facts as set out above establish more than sufficient evidence for the court to submit the case to the jury for its determination. Eyewitnesses testified that they saw Marshall fighting with Rick on the night the Kiles were murdered. One witness testified that Marshall tied the victims with an electrical cord, put them in the trunk of a car, and drove away. Another witness testified that Marshall was seen running from the car after it had been set on fire. The circuit court did not err in denying Marshall’s motion for a judgment of acquittal.
 

 IV.
 

 Marshall next argues that he was denied the effective assistance of counsel because, he says, counsel’s performance in both preparing and trying his capital-murder case was deficient. Specifically, he asserts that counsel failed to request the assistance of an investigator or a mitigation expert.
 

 In Marshall’s motion for a new trial, counsel argued: “[Marshall] was denied a fair and impartial trial because he was denied' effective assistance of counsel.” (R. 102.) After filing the postjudgment motion, trial counsel moved to withdraw because Marshall had retained new counsel. At the hearing on the motion for a new trial, new counsel argued the following:
 

 “[W]e are raising the issue of ineffective assistance of trial counsel in the motion for new trial, because we have to because he has a different lawyer on appeal than he had at trial.
 

 “The grounds for the ineffective assistance of counsel are that trial counsel did not keep the defendant fully informed before, during, and after the trial as to what was happening with his case.
 

 “Trial counsel did not attempt to hire any experts, such as a fire scientist to offset these experts presented by the State.
 

 “And thirdly, that the trial counsel did not properly investigate the case before proceeding to trial.”
 

 (Vol. V, p. 4.)
 

 In
 
 Robitaille v. State,
 
 971 So.2d 43 (Ala. Crim.App.2005), we addressed the problem of reviewing claims of ineffective assistance of counsel on direct appeal. We stated:
 

 “The difficulty of reviewing claims of ineffective assistance of counsel on direct appeal, when those issues have not been developed on the record, was addressed by the United States Supreme Court in
 
 Massaro v. United States,
 
 538 U.S. 500, 123 S.Ct. 1690, 155 L.Ed.2d
 
 *841
 
 714 (2003). The United States Supreme Court stated:
 

 “ ‘When an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose. Under
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant claiming ineffective counsel must show that counsel’s actions were not supported by a reasonable strategy and that the error was prejudicial. The evidence introduced at trial, however, will be devoted to issues of guilt or innocence, and the resulting record in many cases will not disclose the facts necessary to decide either prong of the
 
 Strickland
 
 analysis. If the alleged error is one of commission, the record may reflect the action taken by counsel but not the reasons for it. The appellate court may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was taken because the counsel’s alternatives were even worse. See
 
 Guinan [v. United States,
 
 6 F.3d 468 (7th Cir.1993)], at 473 (Easterbrook, J., concurring) (“No matter how odd or deficient trial counsel’s performance may seem, that lawyer may have had a reason for acting as he did.... Or it may turn out that counsel’s overall performance was sufficient despite a glaring omission ... ”). The trial record may contain no evidence of alleged errors of omission, much less the reasons underlying them. And evidence of alleged conflicts of interest might be found only in attorney-client correspondence or other documents that, in the typical criminal trial, are not introduced. See, e.g.,
 
 Billy-Eko [v. United States,
 
 8 F.3d 111 (2d Cir.1993)], at 114. Without additional factual development, moreover, an appellate court may not be able to ascertain whether the alleged error was prejudicial.’
 

 “538 U.S. at 504-05, 123 S.Ct. 1690. The
 
 Massaro
 
 Court further stated:
 

 “ ‘Even meritorious claims would fail when brought on direct appeal if the trial record were inadequate to support them. Appellate courts would waste time and resources attempting to address some claims that were meritless and other claims that, though colorable, would be handled more efficiently if addressed in the first instance by the district court on collateral review.’
 

 “538 U.S. at 506-07, 123 S.Ct. 1690. See also
 
 United States v. Gordon,
 
 346 F.3d 135, 137 (5th Cir.2003) (‘This is not the rare case in which a claim of ineffective representation can be resolved on direct appeal. The record has not been developed with regard to counsel’s motivation for his trial tactics.’).”
 

 971 So.2d at 68-69. However, because we must examine the record for plain error we will review this claim.
 

 “ ‘Although [counsel] did not hire an independent investigator, this fact alone is not indicative of ineffective assistance in a capital case. The decision to hire an investigator is reviewed for reasonableness. See
 
 Strickland,
 
 466 U.S. at 691, 104 S.Ct. 2052.’ ”
 
 Davis v. State,
 
 9 So.3d 539, 566 (Ala.Crim.App.2008) (after remand from the Alabama Supreme Court), quoting
 
 Bower v. Quarterman,
 
 497 F.3d 459, 470 (5th Cir.2007). “Counsel’s failure to call an expert witness is not
 
 per se
 
 ineffective .... ”
 
 People v. Hamilton,
 
 361 Ill.App.3d 836, 847, 838 N.E.2d 160, 170, 297 Ill.Dec. 673, 683 (2005).
 

 
 *842
 
 The record is totally silent as to why counsel conducted the investigation and the trial in the manner that he did. We do not know the extent of the investigation counsel conducted in this case.
 

 “‘An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption [of effective representation], Therefore “where the record is incomplete or unclear about [counsel]’s actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment.” ’
 
 Chandler v. United States,
 
 218 F.3d 1305, 1314 n. 15 (11th Cir.2000) (en banc) (quoting
 
 Williams v. Head,
 
 185 F.3d 1223, 1228 (11th Cir. 1999)).”
 

 Grayson v. Thompson,
 
 257 F.3d 1194, 1218 (11th Cir.2001). Thus, we cannot say, based on the silent record, that Marshall was denied his right to the effective assistance of counsel.
 

 V.
 

 Last, as required by § 13A-5-53, Ala. Code 1975, we must determine the propriety of Marshall’s conviction and sentence of death. Marshall was indicted for murdering Rick Kile and Allison Kile pursuant to one act or pursuant to one scheme or course of conduct and for murdering them during the course of a kidnapping, violations of §§ 13A-5-40(a)(10), and (a)(1), Ala.Code 1975.
 

 The circuit court found the existence of three aggravating circumstances: (1) that the murders were committed during the course of a kidnapping, an aggravating circumstance as defined in § 13A-5-49(4), Ala.Code 1975; (2) that the murders were committed pursuant to one act or pursuant to one scheme or course of conduct, an aggravating circumstance as defined in § 13A-5-49(9), Ala.Code 1975; and (3) that the murders were especially heinous, atrocious, or cruel as compared to other capital murders, an aggravating circumstance as defined in § 13A-5-49(8), Ala. Code 1975.
 

 In determining that the murders were especially heinous, atrocious, or cruel, the circuit court stated:
 

 “The especially heinous, atrocious, and cruel aggravating circumstance was well established in that the victims, Allison Kile and Rick Kile, were bound at the wrists, and placed side by side in the trunk of a car. Accelerants were found on their clothing which would mean that they were imminently aware of their impending death. They were obviously still alive as they died of carbon monoxide poisoning. Their violent deaths took at least three to five minutes in the trunk of the burning car. The charring and blistering of the bodies made the victims almost unrecognizable. This crime was without a doubt a conscienceless and pitiless crime which was unnecessarily torturous to two victims and one in which the brutality exceeds that which is normally present in any capital offense.”
 

 (Supplemental record 2, p. 7.)
 

 The circuit court found as a statutory mitigating circumstance that Marshall had no significant history of prior criminal activity, see § 13A-5-51(l), AJa.Code 1975. The circuit court found that Marshall’s good character, the fact that his use of drugs might have impaired his judgment, and Marshall’s alibi defense were nonstat-utory mitigating circumstances. See § 13A-5-52, Ala.Code 1975.
 

 According to § 13A-5-53(b)(2), Ala.Code 1975, we must independently weigh the aggravating circumstances and the mitigating circumstances to determine if death was the appropriate sentence in this case. We are convinced, as was the circuit court,
 
 *843
 
 that death was the appropriate sentence for Marshall’s conduct.
 

 Section 13A-5-52(b)(3), Ala.Code 1975, also requires that we examine whether Marshall’s sentence was excessive or disproportionate when compared to sentences imposed in other capital-murder cases. Marshall’s sentence was neither. See
 
 Lewis v. State,
 
 889 So.2d 623 (Ala.Crim. App.2003) (kidnapping/murder);
 
 Broadnax v. State,
 
 825 So.2d 134 (Ala.Crim.App.2000) (kidnapping/murder);
 
 Siebert v. State,
 
 555 So.2d 772 (Ala.Crim.App.1989) (murder of two or more persons);
 
 Holladay v. State,
 
 549 So.2d 122 (Ala.Crim.App.1988) (murder of two or more persons).
 

 Last, we have reviewed the record for any error that may have affected Marshall’s substantial rights and have found none. See Rule 45A, Ala.R.App.P.
 

 Accordingly, Marshall’s capital-murder convictions and his sentence of death are due to be affirmed.
 

 AFFIRMED.
 

 BASCHAB, P.J., and SHAW, WISE, and WELCH, JJ., concur.
 

 [1]
 

 . Eatmon was also convicted of three counts of capital murder for his involvement in the Kiles’ murder. He was also sentenced to death. We affirmed his conviction and death sentence on direct appeal. See
 
 Eatmon v. State,
 
 992 So.2d 64 (Ala.Crim.App.2007).
 

 [2]
 

 . Rule 404(b), Ala.R.Evid., states, in part: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation,
 
 *835
 
 plan, knowledge, identity, or absence of mistake or accident .... ”
 

 *
 

 Note from the reporter of decisions: On October 31, 2008, on application for rehearing, the Alabama Supreme Court withdrew its January 4, 2008, opinion and substituted another opinion. The material quoted below appears in substantially the same form in the substituted October 31, 2008, opinion. See
 
 Ex parte Deardorff,
 
 6 So.3d 1235, 1241 (Ala. 2008).