WELCH, Judge.
The appellant, Timothy Wade Saunders, an inmate currently on death row at Holman Correctional Facility, appeals the Baldwin Circuit Court's summary dismissal of his petition for postconviction relief filed pursuant to Rule 32, Ala. R. Crim. P., attacking his capital-murder conviction and sentence of death.
In August 2005, Saunders was convicted of murdering 77-year-old Melvin Clemons during the course of a robbery and a burglary and of attempting to murder Agnes Clemons. Saunders was sentenced to death for his capital-murder convictions and to life imprisonment for his attempted-murder conviction. We affirmed his convictions on direct appeal. See Saunders v. State, 10 So.3d 53 (Ala. Crim. App. 2007). This Court issued the certificate of judgment on December 1, 2008.
In November 2009, Saunders filed a timely postconviction petition in the Baldwin *1157 Circuit Court. (R. 27.) The State filed its answer and a motion to dismiss the petition. (R. 104.) The circuit court summarily dismissed Saunders's petition. In August 2010, Saunders filed a Rule 32.1(f), Ala. R. Crim. P., motion to extend the time for appealing the summary dismissal of his petition, because, he said, he had not been notified that his postconviction petition had been dismissed.[1] The circuit court denied that motion. Saunders then filed a notice of appeal. By order dated June 28, 2011, this Court dismissed that appeal after holding that the circuit court's ruling was void because no filing fee had been paid and the payment of the filing fee had not been waived. See Saunders v. State (CR-10-0005, June 28, 2011), 107 So.3d 232 (Ala. Crim. App. 2011) (table).[2]
While the appeal in Saunders v. State, (CR-10-0005), was pending in this Court, Saunders filed three additional postconviction petitions seeking an out-of-time appeal from the circuit court's ruling dismissing his first postconviction petition. He filed postconviction petitions in August 2010, January 2011, and again in June 2011. The circuit court denied the petition Saunders filed in January 2011, and Saunders appealed. By order dated April 24, 2013, this Court dismissed that appeal after finding that the circuit court's ruling was void because jurisdiction of the case was solely in this Court at the time that the circuit court issued its ruling. See Saunders v. State (CR-10-1375, April 24, 2013), 161 So.3d 1232 (Ala. Crim. App. 2013) (table). We also noted in the order of dismissal, that in the interest of judicial economy, it would be within the circuit court's discretion to consolidate the remaining postconviction petitions Saunders had filed in that court.
The circuit court consolidated Saunders's remaining postconviction petitions and granted Saunders's request for an out-of-time appeal. This appeal is from the circuit court's ruling of February 11, 2010, summarily dismissing Saunders's first postconviction petition.
On direct appeal, this Court stated the following facts surrounding Saunders's convictions as set out by Saunders in his detailed confession to police:
"Saunders told Sgt. [Tony] Fuqua that he had purchased crack cocaine twice on July 9; the first time he purchased and smoked $50 worth of the drug, the second time he purchased $100 worth of the drug. Saunders said that he went onto the property next to his mother's mobile home, on the other side of a hedgerow, to smoke the last of his crack cocaine because he was ashamed of smoking crack, and he did not want to be near his mother's mobile home when he was ingesting the drug. Saunders said that Mr. Clemons saw him and asked him what he was doing there, and that he told Mr. Clemons that he was getting high; Mr. Clemons then yelled at him and told him to get off the property. Saunders told Sgt. Fuqua that as Mr. Clemons turned *1158 to leave, Saunders heard him say something about calling the police; that he became infuriated; and that he then picked up the crowbar and hit Mr. Clemons on the head several times. Saunders said that he was not sure, but that he believed Mr. Clemons was dead. Saunders acknowledged that he had borrowed the crowbar from Mr. Clemons earlier that day.
"Saunders told Sgt. Fuqua that after he hit Mr. Clemons, he wandered around to clear his head, and then decided to approach the Clemonses' house to try to take any valuables so that he could buy more crack cocaine. He admitted that he feigned an asthma attack and that Mrs. Clemons then let him inside the house. Saunders said that he became angry when Mrs. Clemons tried to call for help, and he grabbed her from behind. Saunders also said that he smoked crack cocaine in the house several times and that Mrs. Clemons had poured a glass of milk for him; according to Saunders, milk helped calm him when he smoked crack cocaine. Sgt. Fuqua asked Saunders about the Windex brand glass cleaner, and Saunders told him that he had used the Windex to wipe down every place he touched to try to destroy fingerprint evidence. Saunders told Sgt. Fuqua that he did not intend to kill or to rape Mrs. Clemons and that he took Mrs. Clemons to a back bedroom so that he could shut the door and escape. Saunders said that after he ran out the back door of the house, he heard a gunshot and he went to his mother's mobile home."
Saunders v. State, 10 So.3d at 67.
Standard of Review
As stated above, Saunders appeals the circuit court's order summarily dismissing his Rule 32, Ala. R. Crim. P., petition. According to Rule 32.3, Ala. R. Crim. P., "[t]he petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief."
When this Court reviewed the issues raised in Saunders's direct appeal we applied a plain-error standard of review because Saunders was sentenced to death. However, the plain-error standard does not apply to postconviction petitions attacking a death sentence. See Brooks v. State, 929 So.2d 491, 495 (Ala. Crim. App. 2005). "The standard of review this Court uses in evaluating the rulings made by the trial court is whether the trial court abused its discretion. See Elliott v. State, 601 So.2d 1118, 1119 (Ala. Crim. App. 1992)." Hunt v. State, 940 So.2d 1041, 1049 (Ala. Crim. App. 2005).
"The petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings."
Rule 32.6(b), Ala. R. Crim. P.
" ' "Where a simple reading of the petition for post-conviction relief shows that, assuming every allegation of the petition to be true, it is obviously without merit or is precluded, the circuit court [may] summarily dismiss that petition." ' Bishop v. State, 608 So.2d 345, 347-48 (Ala. 1992) (emphasis added) (quoting Bishop v. State, 592 So.2d 664, 667 (Ala. Crim. App. 1991) (Bowen, J., dissenting)). See also Hodges v. State, 147 So.3d 916, 946 (Ala. Crim. App. 2007) (a postconviction claim is 'due to be summarily dismissed [when] it is meritless on its face')."
Bryant v. State, 181 So.3d 1087, 1102 (Ala. Crim. App. 2011).
*1159 " ' "If the circuit court is correct for any reason, even though it may not be the stated reason, we will not reverse its denial of the petition." ' " McGahee v. State, 885 So.2d 191, 201 (Ala. Crim. App. 2003), quoting Grady v. State, 831 So.2d 646, 648 (Ala. Crim. App. 2001), quoting in turn, Reed v. State, 748 So.2d 231, 233 (Ala. Crim. App. 1999).
With these principles in mind, we review the issues raised by Saunders in his brief to this Court.
I.
Saunders argues that the circuit court's order of summary dismissal is legally defective because, he says, "it is impossible without evidentiary development to render merits determinations of ineffective assistance of counsel claims that are predicated upon unpresented (sic) evidence." (Saunders's brief, at p. 76.)
When dismissing Saunders's postconviction petition, the circuit court stated, in pertinent part:
"This Court was able to observe Saunders's counsel at all phases of this case and counsel's performance did not fall below the objective standard of reasonableness gauged by prevailing professional standards. Petitioner's complaint of failure on the part of his counsel to present testimony or evidence is without merit, as it would have merely been repetitive. Everything complained of was presented to the jury in the guilt phase and penalty phase of the trial."
(C. 151.)
This Court has repeatedly held that a postconviction petition may be summarily dismissed on its merits. In Bryant v. State, 181 So.3d 1087 (Ala. Crim. App. 2011), we stated:
"[A] circuit court may, in some circumstances, summarily dismiss a postconviction petition based on the merits of the claims raised therein. Rule 32.7(d), Ala. R. Crim. P., provides:
" 'If the court determines that the petition is not sufficiently specific, or is precluded, or fails to state a claim, or that no material issue of fact or law exists which would entitle the petitioner to relief under this rule and that no purpose would be served by any further proceedings, the court may either dismiss the petition or grant leave to file an amended petition. Leave to amend shall be freely granted. Otherwise, the court shall direct that the proceedings continue and set a date for hearing.'
" ' "Where a simple reading of the petition for post-conviction relief shows that, assuming every allegation of the petition to be true, it is obviously without merit or is precluded, the circuit court [may] summarily dismiss that petition." ' Bishop v. State, 608 So.2d 345, 347-48 (Ala. 1992) (emphasis added) (quoting Bishop v. State, 592 So.2d 664, 667 (Ala. Crim. App. 1991) (Bowen, J., dissenting)). See also Hodges v. State, 147 So.3d 916, 946 (Ala. Crim. App. 2007) (a postconviction claim is 'due to be summarily dismissed [when] it is meritless on its face')."
181 So.3d at 1102 (footnote omitted).
More recently, in Stallworth v. State, 171 So.3d 53 (Ala. Crim. App. 2013), this Court specifically addressed a circuit court's summary dismissal of claims alleging that Stallworth's trial counsel was ineffective for failing to present additional mitigation evidence at the penalty phase of his capital-murder trial. We stated:
" 'A trial court may summarily dismiss a post-conviction petition [on a claim of ineffective assistance of counsel] when it is clear upon the face of the petition itself or the exhibits or material from prior proceedings that there are no facts upon which the petitioner *1160 could prevail. Robertson v. State, 669 So.2d 11 (Miss. 1996). See also Taylor v. State, 782 So.2d 166, 168 (¶ 4) (Miss. Ct. App. 2000).'
" Fairley v. State, 812 So.2d 259, 262 (Miss. Ct. App. 2002). 'A petitioner's failure to "show how, but for the attorneys' errors, the results of the proceedings would have been different" justifies a district court's decision to summarily dismiss the ineffective assistance of counsel claim.' Everett v. State, 757 N.W.2d 530, 535 (N.D. 2008) (quoting Hughes v. State, 639 N.W.2d 696, 699 (N.D. 2002) ). '[F]ailing to introduce additional mitigation evidence that is only cumulative of that already presented does not amount to ineffective assistance.' Jalowiec v. Bradshaw, 657 F.3d 293, 319 (6th Cir. 2011) (citing Nields v. Bradshaw, 482 F.3d 442, 454 (6th Cir. 2007) ).
" ' "[I]n order to establish prejudice, the new evidence that a [postconviction] petitioner presents must differ in a substantial way-in strength and subject matter-from the evidence actually presented at sentencing." Hill v. Mitchell, 400 F.3d 308, 319 (6th Cir.), cert. denied, 546 U.S. 1039, 126 S.Ct. 744, 163 L.Ed.2d 582 (2005). In other cases, we have found prejudice because the new mitigating evidence is "different from and much stronger than the evidence presented on direct appeal," "much more extensive, powerful, and corroborated," and "sufficiently different and weighty." Goodwin v. Johnson, 632 F.3d 301, 328, 331 (6th Cir. 2011). We have also based our assessment on "the volume and compelling nature of th[e new] evidence." Morales v. Mitchell, 507 F.3d 916, 935 (6th Cir. 2007). If the testimony "would have added nothing of value," then its absence was not prejudicial. [ Bobby v.] Van Hook, [558 U.S. 4, 12,] 130 S.Ct. [13,] 19, 175 L.Ed.2d 255 [ (2009) ]. In short, "cumulative mitigation evidence" will not suffice. Landrum v. Mitchell, 625 F.3d 905, 930 (6th Cir. 2010), petition for cert. filed (Apr. 4, 2011) (10-9911).'
" Foust v. Houk, 655 F.3d 524, 539 (6th Cir. 2011). See Johnston v. State, 63 So.3d 730, 743 (Fla. 2011) ('[T]he substance of almost all the information now presented by Johnston was presented to the jury. Therefore, counsel was not deficient in failing to present additional mitigation evidence.'); Landrum v. Mitchell, 625 F.3d 905, 930 (6th Cir. 2010) ('The petitioner must present new evidence that differs both in strength and subject matter from the evidence actually presented at sentencing, not just cumulative mitigation evidence.'); Jones v. State, 998 So.2d 573, 587 (Fla. 2008) ('We have repeatedly held that counsel is not ineffective for failing to present cumulative evidence.'); Ford v. Hall, 546 F.3d 1326, 1328 (11th Cir. 2008) ('Counsel is not required to call additional witnesses to present redundant or cumulative evidence.'); Havard v. State, 988 So.2d 322, 337 (Miss. 2008) ('Not calling witnesses who will testify negatively for a client or who will testify to matters cumulative in nature is not deficient performance by counsel.'); Commonwealth v. Spotz, 587 Pa. 1, 71, 896 A.2d 1191, 1232 (2006) ('[A] defendant is not prejudiced by the failure of trial counsel to pursue cumulative evidence of the defendant's background....'); Lyons v. State, 269 Ga.App. 27, 31, 602 S.E.2d 917, 921 (2004) ('Trial counsel's failure to present cumulative evidence does not amount to ineffective assistance.'); Skillicorn v. State, 22 S.W.3d 678, 683 (Mo. 2000) ('Counsel is not ineffective for not putting on cumulative evidence.'); Coulter v. State, 343 Ark. 22, 31, 31 S.W.3d 826, 832 (2000) ('[T]he omission of a witness when *1161 his or her testimony is cumulative does not deprive the defense of vital evidence.') State v. Ferguson, 20 S.W.3d 485, 509 (Mo. 2000) ('[C]ounsel's failure to present additional evidence that would have been cumulative does not amount to ineffective assistance of counsel.').
"Given the extensive evidence counsel presented in mitigation, a large portion of which was cumulative to the mitigating evidence Stallworth pleaded should have been presented, this claim was properly dismissed because Stallworth failed to state a claim upon which relief could be granted. '[T]he notion that the result could have been different if only [counsel] had put on more than the nine witnesses he did, or called expert witnesses to bolster his case, is fanciful.' Wong v. Belmontes, 558 U.S. [15] at 28, 130 S.Ct. 383, 175 L.Ed.2d 328 [ (2009) ]."
171 So.3d at 79-80. Clearly, the trial court acted within its discretion and in accordance with the scope of Rule 32.7(d), Ala. R. Crim. P., in summarily dismissing some of Saunders's Strickland [ v. Washington, 466 U.S. 668 (1984) ] claims on the merits.
Saunders also argues that the order of dismissal is inadequate because, he says, it does not address each specific allegation raised in his petition. (Saunders's brief, at p. 77) He cites Ex parte Grau, 791 So.2d 345 (Ala. 2000), in support of his argument. However, the decision in Ex parte Grau is readily distinguishable from the facts in this case. The holding in Ex parte Grau was premised on the fact that the circuit court had held an evidentiary hearing on the petition but had failed to make findings of facts in regard to that hearing. However, in Daniel v. State, 86 So.3d 405 (Ala. Crim. App. 2011), this Court stated:
" '[R]ule 32.9(d), Ala. R. Crim. P., requires findings of fact only if an evidentiary hearing is held. Findings are not required if the petition is dismissed.' Fowler v. State, 890 So.2d 1101, 1103 (Ala. Crim. App. 2004). 'Rule 32.9(d), Ala. R. Crim. P., requires the circuit court to make specific findings of fact only after an evidentiary hearing or the receipt of affidavits in lieu of a hearing.' Chambers v. State, 884 So.2d 15, 19 (Ala. Crim. App. 2003). See also Ex parte McCall, 30 So.3d 400 (Ala. 2008). The circuit court did not err in failing to make written findings of fact concerning Daniel's claims."
86 So.3d at 412. Here, because no evidentiary hearing was held, the circuit court was not required to make specific findings of fact on each claim raised in Saunders's petition. See Daniel.
Accordingly, we review the issues raised by Saunders in his brief to this Court.
II.
Saunders argues that the circuit court erred in summarily dismissing his "well-pleaded" postconviction petition because, he says, he more than satisfied the minimal pleading requirements of Rule 32.6(b), Ala. R. Crim. P.
In addressing the scope of Rule 32.6(b), Ala. R. Crim. P., and the burden of "pleading" this Court has stated:
"[A]t the pleading stage of Rule 32 proceedings, a Rule 32 petitioner does not have the burden of proving his claims by a preponderance of the evidence. Rather, at the pleading stage, a petitioner must provide only 'a clear and specific statement of the grounds upon which relief is sought.' Rule 32.6(b), Ala. R. Crim. P. Once a petitioner has met his burden of pleading so as to avoid summary disposition pursuant to Rule 32.7(d), Ala. R. Crim. P., he is then entitled to an opportunity to present *1162 evidence in order to satisfy his burden of proof."
Ford v. State, 831 So.2d 641, 644 (Ala. Crim. App. 2001).
Nonetheless, the pleading requirements for postconviction petitions are more stringent than those required for civil actions. As we stated in Washington v. State, 95 So.3d 26 (Ala. Crim. App. 2012) :
"Although postconviction proceedings are civil in nature, they are governed by the Alabama Rules of Criminal Procedure. See Rule 32.4, Ala. R.Crim. P. The 'notice pleading' requirements relative to civil cases do not apply to Rule 32 proceedings. 'Unlike the general requirements related to civil cases, the pleading requirements for postconviction petitions are more stringent....' Daniel v. State, 86 So.3d 405, 410-11 (Ala. Crim. App. 2011). Rule 32.6(b), Ala. R. Crim. P., requires that full facts be pleaded in the petition if the petition is to survive summary dismissal. See Daniel, supra. Thus, to satisfy the requirements for pleading as they relate to postconviction petitions, Washington was required to plead full facts to support each individual claim."
95 So.3d at 59. See also Jackson v. State, 133 So.3d 420 (Ala. Crim. App. 2009).
" ' Rule 32.6(b) requires that the petition itself disclose the facts relied upon in seeking relief.' Boyd v. State, 746 So.2d 364, 406 (Ala. Crim. App. 1999). In other words, it is not the pleading of a conclusion 'which, if true, entitle[s] the petitioner to relief.' Lancaster v. State, 638 So.2d 1370, 1373 (Ala. Crim. App. 1993). It is the allegation of facts in pleading which, if true, entitles a petitioner to relief. After facts are pleaded, which, if true, entitle the petitioner to relief, the petitioner is then entitled to an opportunity, as provided in Rule 32.9, Ala. R. Crim. P., to present evidence proving those alleged facts."
Boyd v. State, 913 So.2d 1113, 1125 (Ala. Crim. App. 2003).
In his Rule 32 petition, Saunders pleaded that he had been denied the effective assistance of counsel at his capital-murder trial. This Court has stated the following concerning pleading claims of ineffective-assistance-of-counsel:
"To sufficiently plead an allegation of ineffective assistance of counsel, a Rule 32 petitioner not only must 'identify the [specific] acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,' Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), but also must plead specific facts indicating that he or she was prejudiced by the acts or omissions, i.e., facts indicating 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' 466 U.S. at 694, 104 S.Ct. 2052. A bare allegation that prejudice occurred without specific facts indicating how the petitioner was prejudiced is not sufficient."
Hyde v. State, 950 So.2d 344, 355-56 (Ala. Crim. App. 2006).
A.
Saunders first argues that the circuit court erred in dismissing his claim that his counsel was ineffective at the guilt phase of his capital-murder trial, because, he says, the claims were meritorious on their face.
1.
Saunders first pleaded that his counsel's performance was "per se" ineffective because, he said, counsel conceded that Saunders was guilty of murder. Specifically, he argues that the concession by counsel was sufficient, in itself, to trigger the presumed-prejudice standard of review under *1163 Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). He also argues that counsel's method of questioning Saunders constituted ineffective assistance.
In his postconviction petition, Saunders pleaded the following:
"[T]rial counsel placed Mr. Saunders on the stand and not only allowed him to admit killing the deceased victim but also, in effect, took on the role of prosecutor in questioning Mr. Saunders. Trial counsel's actions caused Mr. Saunders to provide the State with the functional equivalent of a guilty plea. Trial counsel's concession of guilt also likely impacted their performance at every stage of the trial.
"Trial counsel's concession of guilt violated not only Mr. Saunders right under the due process clause to plead not guilty, but also his right to 'hold the government to strict proof beyond a reasonable doubt' and 'have his guilt or innocence decided by the jury.' Wiley v. Sowders, 647 F.2d 642, 650 (6th Cir. 1981). See also Francis v. Spraggins, 720 F.2d 1190, 1194 (11th Cir. 1983). Such conduct is per se ineffective assistance of counsel and 'triggers a presumption of prejudice.' United States v. Williamson, 53 F.3d 1500, 1511 (10th Cir. 1995).
"Accord, Brown v. Rice, 693 F.Supp. 381, 396 (W.D.N.C. 1988) ('[counsel's concession of guilt is ineffective assistance] regardless of the weight of the evidence of defendant'), reversed on other grounds, Brown v. Dixon, 891 F.2d 490 (4th Cir. 1989) ; State v. Harbison, 315 N.C. 175, 337 S.E.2d 504, 507-08 (1985) ('[W]hen counsel ... admits his client's guilt, the harm is so likely and so apparent that ... prejudice need not be addressed.') Accordingly, Mr. Saunders conviction must be reversed. United States v. Swanson, 943 F.2d 1070, 1071 (9th Cir. 1991) (finding that counsel's concession of guilty is 'a deprivation of ... due process and the effective assistance of counsel')."[3]
(R. 54-55.)[4]
Initially, we note that Saunders has mischaracterized counsel's actions at trial. Although counsel did concede that Saunders did commit the act that resulted in Mr. Clemons's death, counsel argued that Saunders could not form any specific intent to kill because he was under the influence of crack cocaine at the time of the killing. Counsel did not concede Saunders's *1164 entire guilt as Saunders's argues in his brief to this Court. Moreover, even if counsel did concede Saunders's guilt, Saunders would be entitled to no relief on this claim.
The United States Supreme Court in United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), recognized that there are some situations where the prejudice prong of the Strickland inquiry is presumed when counsel's actions constitute a complete or constructive denial of the right to counsel. Later, the United States Supreme Court in Florida v. Nixon, 543 U.S. 175, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004), held that a trial counsel's failure to obtain the defendant's consent when conceding the defendant's guilt at the guilt stage of a capital-murder trial does not constitute a "per se" denial of the effective assistance of counsel. The United States Supreme Court in Nixon stated:
"On the record thus far developed, [defense counsel's] concession of Nixon's guilt does not rank as a 'fail[ure] to function in any meaningful sense as the Government's adversary.' [ United States v. Cronic, 466 U.S. 648] at 666, 104 S.Ct. 2039, 80 L.Ed.2d 657 [ (1984) ]. Although such a concession in a run-of-the-mine trial might present a closer question, the gravity of the potential sentence in a capital trial and the proceeding's two-phase structure vitally affect counsel's strategic calculus. Attorneys representing capital defendants face daunting challenges in developing trial strategies, not least because the defendant's guilt is often clear. Prosecutors are more likely to seek the death penalty, and to refuse to accept a plea to a life sentence, when the evidence is overwhelming and the crime heinous. See Goodpaster, The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases, 58 N.Y.U.L.Rev. 299, 329 (1983). In such cases, 'avoiding execution [may be] the best and only realistic result possible.' ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases § 10.9.1, Commentary (rev. ed 2003), reprinted in 31 Hofstra L. Rev. 913, 1040 (2003)."
543 U.S. at 190-91, 125 S.Ct. 551. See In re Dante W., 383 Ill.App.3d 401, 413, 322 Ill.Dec. 111, 121-22, 890 N.E.2d 1030, 1039-49 (2008) ("It is not per se ineffective assistance of counsel when a defendant's attorney 'concedes his client's guilt to offenses in which there [was] overwhelming evidence of that guilt.' [ People v.] Johnson, 128 Ill.2d [253] at 269, 131 Ill.Dec. 562, 538 N.E.2d 1118 [ (1989) ]. 'In situations where there is overwhelming evidence of guilt and no defense, if counsel contests all charges he is liable to lose credibility with the trier of fact when it comes to charges where a legitimate defense exists.' Johnson, 128 Ill.2d at 270, 131 Ill.Dec. 562, 538 N.E.2d 1118. If defense counsel concedes the defendant's guilt, 'ineffectiveness may be established; however, the defendant faces a high burden before he can forsake the two-part Strickland test.' Johnson, 128 Ill.2d at 269-70, 131 Ill.Dec. 562, 538 N.Ed.2d 1118."); State v. Campbell, 90 Ohio St.3d 320, 337, 738 N.E.2d 1178, 1198 (2000) ("Concessions of guilt, in any form, are among the most troublesome actions a defense counsel can [t]ake ...' State v. Goodwin (1999), 84 Ohio St.3d 331, 336, 703 N.E.2d 1251, 1258. Nevertheless, such concessions are not per se ineffective but must be analyzed under Strickland for deficiency and prejudice. See Goodwin at 336-339, 703 N.E.2d at 1258-1260.").
Alabama has held that it is not "per se" ineffective assistance for counsel to concede a defendant's limited guilt. In Walker v. State, 194 So.3d 253 (Ala. Crim. App. 2015), we stated:
"Alabama follows the majority view and holds that it is not per se ineffective *1165 assistance for an attorney to partially concede a defendant's guilt.
" ' "Although Alabama has had little occasion to address whether counsel renders deficient performance by conceding guilt, we have held that it is not per se ineffective assistance for counsel to concede a client's limited guilt." Taylor v. State, 10 So.3d [1037] at 1058 [ (Ala. Crim. App. 2004) ]. See also Commonwealth v. Steele, 599 Pa. 341, 386, 961 A.2d 786, 812 (2008) ("In [ Florida v.] Nixon, [543 U.S. 175, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004),] the High Court reiterated that [ United States v.] Cronic, [466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), and the presumed prejudice standard] is limited to situations where counsel's failure is complete, i.e., where 'counsel has entirely failed to function as the client's advocate.' "); Sage v. State, 905 So.2d 1039, 1041 (Fla. App. 2005) ("[T]he defendant must show that counsel's concession strategy was 'unreasonable.' ").'
" Lee v. State, 44 So.3d 1145, 1169-70 (Ala. Crim. App. 2009). Because the presumed-prejudice standard does not apply in this case-Walker was required to prove both prongs of the Strickland test.
Walker, 194 So.3d at 282. Because the presumed-prejudice standard would not apply in Saunders's case, Saunders was required to plead how he was prejudiced by counsel's concession of guilt; however, Saunders failed to do so. Therefore, according to Rule, 32.6(b), Ala. R. Crim. P., Saunders failed to meet his burden of pleading the full facts in support of this claim.
Moreover, the trial record clearly shows that Saunders made a detailed confession to police in which he gave a minute-by-minute account of the murder, that his confession was admitted into evidence over counsel's vigorous objections, and that the direct evidence connecting Saunders to the murder was overwhelming.[5] Although it is true that counsel did concede that Saunders committed the act that resulted in Clemons's death, counsel did not concede that Saunders had any intent to kill. Counsel's entire defense was that Saunders was under the influence of crack cocaine at the time of the murder, that he was incapable of forming the specific intent to kill Clemons, and that he was guilty, at most, of manslaughter. In fact, enough evidence was presented on this defense to warrant a jury instruction on voluntary intoxication.
More importantly, this Court on direct appeal found that trial counsel was not ineffective for conceding Saunders's guilt and for questioning Saunders in the manner that he did.
"Based on our thorough review of the record in light of the legal principles set out above, we conclude that Saunders has not established that defense counsel was ineffective. Based on the trial record alone, with no testimony from defense counsel about the reasons he took the actions to which Saunders now objects, we find that defense counsel made a reasonable, tactical decision to admit to the underlying facts of the crimes, and then to argue that Saunders did not commit capital murder because he was under the influence of crack cocaine and, therefore, unable to form a specific intent.
"Immediately after he was arrested, Saunders confessed to killing Mr. Clemons by hitting him on the head with the crowbar he had borrowed earlier from Mr. Clemons, and he admitted that he had feigned an asthma attack to gain *1166 entry into the Clemonses' residence, where he attacked Mrs. Clemons and took money from Mr. Clemons's wallet and from Mrs. Clemons's purse. Faced with Saunders's confession, with Mrs. Clemons's identification of Saunders at trial and her testimony at trial, and with the other testimony and evidence establishing Saunders's participation in the crimes, defense counsel reasonably attempted to urge the jury to find Saunders guilty of lesser-included charges based on Saunders's inability to form the specific intent to commit capital murder. In his opening argument to the jury, defense counsel argued that Saunders 'snapped' while smoking crack cocaine, that he struck Mr. Clemons on the head (R. 376), and that 'everything that happened afterwards would have been an afterthought' (R. 378). Defense counsel also argued in his opening statement that Saunders did not have the intent to murder or to rape Mrs. Clemons, although he admitted the State would present evidence of an assault. (R. 378.) Finally, defense counsel argued that, once the police apprehended Saunders, they did not investigate some of the details provided by Saunders and by Mrs. Clemons, and the police did not eliminate the possibility that Saunders did not act alone. In his closing argument, defense counsel argued that, while there was no question about who committed the acts against the Clemonses, the question for the jury was to determine Saunders's intent. According to counsel, Saunders did not have the specific intent to commit capital murder because he did not plan to commit the series of crimes and the robbery and burglary were afterthoughts that arose after Saunders 'snapped' and killed Mr. Clemons. Counsel also argued that the jury could conclude that Saunders's intoxication on crack cocaine negated his specific intent to commit murder and that the jury could find Saunders guilty of manslaughter."
Saunders v. State, 10 So.3d at 92-93.
Based on Alabama law, counsel was not "per se" ineffective for conceding that Saunders was guilty of killing Clemons. Also, given the overwhelming evidence of Saunders's guilt, Saunders could have suffered no prejudice as a result of counsel's questioning. See Walker, supra. Accordingly, there was no material issue or law or fact that would entitle Saunders to relief; therefore, this claim was correctly summarily dismissed. See Rule 32.7(d), Ala. R. Crim. P.
2.
Saunders next argues that the circuit court erred in dismissing his claim that his trial counsel was ineffective for failing to investigate and present evidence of mental illness and drug and alcohol abuse in order to challenge the specific intent necessary to convict of capital murder.
In Saunders's postconviction petition, he pleaded, in part:
"[T]rial counsel's failure to investigate and present evidence relevant to Mr. Saunders's drug and alcohol usage, including expert testimony, fell short of the professional standards that prevailed in Alabama in 2005.
"As a result of trial counsel's failure to conduct an adequate investigation into the circumstances and effects of his drug use, such evidence was not presented adequately during any phase of his trial."
(C. 57.)
The record shows that counsel moved that he be granted funds to secure a clinical psychologist, Dr. Stanley Brodsky. Dr. Brodsky evaluated Saunders and found no evidence that he was unable to "differentiate *1167 between right and wrong" at the time of the murder. Counsel also requested Saunders's medical files from three prisons in South Carolina and from the South Carolina Department of Corrections.[6] (Trial Record C. 22-30.)
Also, as the State correctly argues in brief, counsel did repeatedly present evidence that Saunders had been using crack cocaine at the time of the murder. In opening statement, counsel stated:
"[Saunders] says he was ashamed to smoke crack in front of his parents, around his family, and I guess that's understandable, and he would sneak over onto the Clemons's property is where he was smoking crack.
"On the night in question, as [the prosecutor] has said, he was smoking crack out there on the property and he had the crowbar with him, it was in his shorts, no shirt, no shoes, he was over there smoking crack."
(Trial R. 376.) Agnes Clemons testified that Saunders smoked crack cocaine twice while he was in her house terrorizing her. (Trial R. 408.) On her cross-examination, the following occurred:
"[Defense counsel]: You said Mr. Saunders or Tim had shown up on the back porch and was breathing hard and sweating?
"[Agnes Clemons]: He was sitting right on the patio right off of the back porch, yes, and he was really sweaty looking and sitting there looking like something was wrong with him.
"[Defense counsel]: Right. Now, part of when you were testifying, he-you said that again he had started to smoke crack and that was somewhere in the hallway or in the bathroom. Is that where that had happened the second time?
"[Agnes Clemons]: He started smoking crack in my dining room. He made me sit in there and watch him smoke it. I didn't even know what it was.
"[Defense counsel]: Yes, ma'am.
"[Agnes Clemons]: He made me sit down in a chair, and he sat at the dining room table and smoked crack.
"[Defense counsel]: Yes, ma'am. And do you recall how long that took for him to do it that first occasion or that first time?
"[Agnes Clemons]: You know, I was so scared, I don't know how long that he-everything seemed like an eternity to me because I was very, very frightened. But he must have put about probably-maybe three or four pellets, one at a time. And he'd light it up and he'd put another one in there and it would do that in my dining room."
(Trial R. 421-22.) Sgt. Tony Fuqua, an officer with the Foley Police Department, testified that Saunders told him that he had been smoking crack off and on for two or three weeks and that he "did have a problem, dependency problem with crack cocaine." (Trial R. 702.) Lt. David White of the Foley Police Department testified that at the edge of the woods near the Clemons's house police discovered "an ashtray that had a smoking pipe in it" and a "little baggy, sandwich baggy that contained a small amount of crack cocaine in it." (Trial R. 862.) Saunders also testified in his own defense. He said that he purchased crack cocaine twice on the day of the murder, that he went to the Clemons's property to smoke cocaine, that he did not recall choking or strangling Clemons because, he said, he was high on crack cocaine.
*1168 The record clearly shows that Saunders's trial counsel did present a great deal of evidence of Saunders's drug use. The record also shows that Saunders had been evaluated by a clinical psychologist and that counsel was in possession of that psychological report.
To the extent that Saunders argues that counsel was ineffective for failing to present the testimony of an expert on the effects of alcohol and drug abuse, Saunders failed to adequately plead this aspect of this claim. Saunders failed to plead how this evidence should have been presented or what expert should have presented this evidence. As the State correctly argues in brief, Saunders failed to identify any expert who would have testified to the effects of drug abuse at Saunders's trial. As we have repeatedly stated: "When pleading a postconviction claim that trial counsel was ineffective for failing to secure the services of an expert, this Court has required that the petitioner include in its pleading the expert's identity and the content of that expert's expected testimony." Woods v. State, 221 So.3d 1125, 1137 (Ala. Crim. App. 2016). See also Daniel v. State, 86 So.3d 405 (Ala. Crim. App. 2011) ; Windsor v. State, 89 So.3d 805 (Ala. Crim. App. 2009).
Moreover, as we stated in State v. Gissendanner, [Ms. CR-09-0998, October 23, 2015] --- So.3d ----, ---- (Ala. Crim. App. 2015) :
" ' "Counsels' failure to call an expert witness is not per se ineffective...." ' Marshall v. State, 20 So.3d 830, 841 (Ala. Crim. App. 2008), quoting People v. Hamilton, 361 Ill.App.3d 836, 847, 297 Ill.Dec. 673, 683, 838 N.E.2d 160, 170 (2005). 'There is no per se rule that requires trial attorneys to seek out an expert.' Gersten v. Senkowski, 299 F.Supp.2d 84 (E.D.N.Y. 2004)."
Cf. Wiggins v. State, 193 So.3d 765, 801 (Ala. Crim. App. 2014) ("Some courts have found that expert testimony on the effects of alcohol is not necessary because it concerns an issue within the common knowledge of a juror.").
Thus, there was no material issue of fact or law that would entitle Saunders to relief; therefore, the circuit court correctly summarily dismissed this claim. See Rule 32.7(d), Ala. R. Crim. P.
B.
Saunders next argues that the circuit court erred in summarily dismissing his claims that his trial counsel was ineffective in the penalty phase because, he says, the claims were meritorious on their face.
1.
First, Saunders argues that his trial counsel was ineffective for failing to develop and present evidence regarding the severe abuse he says he suffered throughout his childhood.
In his brief on appeal, Saunders argues that counsel was ineffective for failing to present the following laundry list of evidence: that the Saunders children often did not have enough food, that their parents bottle-fed the children until they were five years old, that their parents never took them to the doctor or the dentist until they were bleeding or had a broken bone, that if they made noise in the car their mother would pinch them to the point of bruising and bleeding, that Mrs. Saunders would pinch her daughter's breasts and her sons' penises, that Mrs. Saunders would tie rocks to the bottom of her children's feet, that Mrs. Saunders seriously considered killing Saunders's father and once actually walked into the bedroom with a knife for this purpose, that Mrs. Saunders handed Saunders's youngest brother to his sister and said, *1169 'here, you raise him,' that Mrs. Saunders would send pictures of the children in dirty and ill-fitting clothes to their grandparents and, when the grandparents responded by sending money for the children, Mrs. Saunders would use it to buy alcohol, that Mrs. Saunders would party and have sex with men in the trailer without regard to the presence of the children, that Saunders's stepfather was verbally and physically abusive, and that the Saunders' family lived in the back of an abandoned building for a time. (Saunders's brief, at p. 67.)[7]
In this Court's opinion on direct appeal, we stated the following concerning the plethora of evidence that Saunders's counsel had presented in mitigation at Saunders's sentencing hearing:
"At the penalty phase of the trial, Saunders presented evidence regarding his childhood, his mental health, and his prison record. Marie Saunders Young, Saunders's older sister, testified about the members of the Saunders family and about their chaotic upbringing. Young testified that when she and her five brothers were growing up, the family moved frequently and lived in several small houses, a hotel, small mobile homes, and an abandoned building. They were often evicted for failing to pay the rent, and they often did not have electricity or running water in the places they lived. Young stated that their parents were violent toward each other and that they drank alcohol to excess. Young said that it was she, not her parents, who took care of the house and her brothers, and who made sure the boys went to school, had clean clothes, did their homework, and completed the chores she had assigned to them. According to Young, their mother hit all the children with mop and broom handles and other objects as corporal punishment. Young said that, although she graduated from high school, Saunders quit school in the middle of the sixth grade, when he was 13 or 14 years old. Young testified that she and her husband had let Saunders live with them for a while at one point, that her husband taught Saunders carpentry, and that Saunders worked with her husband. However, Young testified that Saunders 'was doing a long list of drugs' and drank alcohol. (R. 1151.) She also testified that Saunders had attempted suicide, according to Young. Saunders once attempted to shoot himself in the head with a nail gun, but failed because someone had unplugged the gun.
"Joanne Terrell, a certified clinical social worker, completed a psychosocial assessment of Saunders. Terrell testified that the focus of a psychosocial assessment is on a variety of environmental factors, including the person's childhood, adolescence, family history, school and work history, drug and alcohol problems, family relationships, and psychiatric problems. Terrell testified about the details she learned about Saunders's upbringing, which she described as 'disastrous' (R. 1258), and concluded, among other things, that Saunders grew up in a neglectful, abusive, and dangerous environment; that he witnessed domestic violence and was a victim of violence in his home; that Saunders lived in an impoverished and 'gypsy-type environment' (R. 1261); that he became anxious and depressed and had learned to deal *1170 with his feelings by ingesting drugs and alcohol and that he developed a significant dependency on drugs and alcohol; and that on the night of the crimes for which Saunders was convicted in this case, his acute drug and alcohol intoxication, combined with what Terrell believed to be Saunders's psychological disorder, had resulted in Saunders's having a diminished capacity to appreciate his actions. On cross-examination, however, Terrell acknowledged that Saunders had told her associate who interviewed him that he had had a good childhood,[8] that he had all the food and clothing he needed, and that he had received gifts for birthdays and Christmases. Terrell also acknowledged that her report inaccurately stated that Saunders's parents had divorced when he was 10 or 11 years old, when, in fact, they had divorced when Saunders was approximately 6 years old. Therefore, Terrell admitted, Saunders did not observe physical violence between his parents after he was 6 years old.
"Stanley Brodsky, a clinical psychologist, evaluated Saunders before trial. Dr. Brodsky conducted a forensic clinical interview, reviewed available psychiatric records, and administered three psychological tests to Saunders. Dr. Brodsky found no information suggesting that when Saunders committed the crimes for which he was convicted he was unable to differentiate between right and wrong; Dr. Brodsky also found no evidence that Saunders was unaware of his actions or that he was unable to appreciate the wrongfulness of his actions. Dr. Brodsky concluded that Saunders suffered from a major depressive disorder 'with mood congruent psychotic features' (R. 1196), and explained that Saunders had reportedly experienced auditory hallucinations, a voice telling him to 'just go ahead and do it,' which was related to his past suicide attempts. (R. 1197.) Dr. Brodsky determined that Saunders had a history beginning in early adolescence 'of a huge intensity and volume of alcohol and drug abuse, almost every imaginable, available illegal drugs and lots and lots of legal drugs that he used as well as large amounts of alcohol,' which led Dr. Brodsky to diagnose Saunders as suffering from polysubstance dependency. Dr. Brodsky also concluded that Saunders could control himself, but that he had a diminished capacity to control himself when he committed the crimes, and that the diminished capacity was the result of his psychological disorder and the drugs he had ingested.
"Calvin Means, Jr., classification officer at Baldwin County Correctional Facility, testified that Saunders was in the 'high max' classification at the facility (R. 1176), but that, during the 13 or 14 months that Saunders had been at the facility, he had received no disciplinary citations."
Saunders v. State, 10 So.3d at 72-73.
First, in Saunders's petition he merely lists a laundry list of evidence he says counsel failed to present at sentencing. However, he did not specifically identify any witness who could have, or would have, testified to any of the specific evidence contained in this laundry list. Moreover, a good portion of the listed evidence was similar to evidence that had been presented at Saunders's sentencing. Saunders *1171 merely presented it in a more detailed fashion in his postconviction petition.
However,
" ' "the failure to present additional mitigating evidence that is merely cumulative of that already presented does not rise to the level of a constitutional violation." Nields v. Bradshaw, 482 F.3d 442, 454 (6th Cir. 2007) (quoting Broom v. Mitchell, 441 F.3d 392, 410 (6th Cir. 2006) ).' Eley v. Bagley, 604 F.3d 958, 968 (6th Cir. 2010). 'This Court has previously refused to allow the omission of cumulative testimony to amount to ineffective assistance of counsel.' United States v. Harris, 408 F.3d 186, 191 (5th Cir. 2005). 'Although as an afterthought this [defendant's father] provided a more detailed account with regard to the abuse, this Court has held that even if alternate witnesses could provide more detailed testimony, trial counsel is not ineffective for failing to present cumulative evidence.' Darling v. State, 966 So.2d 366, 377 (Fla. 2007)."
Daniel v. State, 86 So.3d 405, 429-30 (Ala. Crim. App. 2011). "[P]ostconviction evidence can be cumulative to evidence presented during trial even where the postconviction evidence is more elaborate than the trial testimony. See Sweet v. State, 810 So.2d 854, 863 (Fla. 2002)." State v. Bright, 200 So.3d 710, ---- (Fla. 2016). " '[T]his Court has held that "even if alternate witnesses could provide more detailed testimony, trial counsel is not ineffective for failing to present cumulative evidence." ' " Bailey v. State, 151 So.3d 1142, 1151 (Fla. 2014). See also Davis v. State, 486 S.W.3d 898, 907 (Mo. 2016) ("[T]rial counsel's failure to develop or present evidence that is cumulative to that presented at trial does not constitute ineffective assistance of counsel."); Commonwealth v. Mason, 130 A.3d 601, 648 (Pa. 2015) ("Nor may a determination of ineffective assistance of counsel be founded upon counsel's failure to present mitigating evidence that would have been cumulative of evidence presented at the penalty phase."); Marcyniuk v. State, 2014 Ark. 268, 436 S.W.3d 122, 135 (2014) ("[T]he failure to call witnesses whose testimony would be cumulative to testimony already presented does not deprive the defense of vital evidence.").
The record clearly shows that Saunders's older sister, Marie Saunders Young, and Joanne Terrell, a clinical social worker, and Dr. Stanley Brodsky, a psychologist, testified concerning Saunders's abusive and neglectful childhood.
Thus, there was no material issue of fact or law that would entitle Saunders to relief; therefore, this claim was properly summarily dismissed. See Rule 32.7(d), Ala. R. Crim. P.
2.
Saunders also argues that counsel was ineffective for failing to present evidence of his history of mental illness and his chronic and acute substance abuse.
Saunders specifically pleaded that his trial counsel was ineffective for failing to more fully develop the testimony of Dr. Stanley Brodsky, a clinical psychologist, and Joanne Terrell, a clinical social worker. In his petition, Saunders merely recites a synopsis of the reports prepared by each of the two experts but failed to plead what questions counsel should have asked, or what counsel should have done, to elicit the testimony he maintained should have been presented. Saunders failed to plead "full facts" in regard to this claim, and it was correctly summarily dismissed. See Rule 32.6(b), Ala. R. Crim. P.
Moreover,
" 'counsel's method of presenting mitigation ... [is] clearly trial strategy.'
*1172 Hertz v. State, 941 So.2d 1031, 1044 (Fla. 2006). See also People v. Ratliff, 41 Cal.3d 675, 697, 224 Cal.Rptr. 705, 715 P.2d 665, 678 (1986) ('[T]he manner of presenting evidence [is] one of trial tactics properly vested in counsel.'). '[T]he presentation of mitigating evidence is a matter of trial strategy.' State v. Keith, 79 Ohio St.3d 514, 530, 684 N.E.2d 47, 63 (1997). 'Matters of trial tactics and trial strategy are rarely interfered with or second-guessed on appeal.' Arthur v. State, 711 So.2d 1031, 1089 (Ala. Crim. App. 1996), aff'd, 711 So.2d 1097 (Ala. 1997)."
Clark v. State, 196 So.3d 285, 315-16 (Ala. Crim. App. 2015). "Counsel cannot be deemed ineffective merely because current counsel disagrees with trial counsel's strategic decisions." Occhicone v. State, 768 So.2d 1037, 1048 (Fla. 2000).
As detailed above, at the sentencing hearing trial counsel did present the testimony of a clinical psychologist, Dr. Stanley Brodsky. Dr. Brodsky testified that after evaluating Saunders he determined that Saunders suffered from a major depressive disorder, that he had experienced auditory hallucinations, that he had a history of alcohol and drug abuse, that he was suffering from polysubstance dependency, and that he had a diminished capacity to control himself at the time of the murder based on his psychological disorder and his ingestion of drugs.
Evidence of Saunders's mental health was offered at the penalty phase of his trial. Also, three witnesses testified at Saunders's penalty phase concerning his long history of substance abuse. Moreover, the circuit court found that Saunders's drug use at the time of the murder was a mitigating circumstance. (Supple. Trial C. 33.)
In regard to Saunders's argument that counsel failed to present evidence of his family history of mental illness, Saunders merely pleaded that counsel failed to present evidence indicating that his family members had a history of irrational conduct. (C. 70-71.) In Alabama "[a] defendant in a capital-murder case is entitled to an individualized sentencing determination." Scott v. State, 163 So.3d 389, 467 (Ala. Crim. App. 2012). We fail to see how the absence of any of the information concerning the irrational conduct of Saunders's family members would have resulted in any prejudice to Saunders.
Accordingly, there was no material issue of fact or law that would entitle Saunders to relief; therefore, the circuit court correctly summarily dismissed this claim. See Rule 32.7(d), Ala. R. Crim. P.
III.
Saunders next argues that his remaining claims should not have been summarily dismissed. Specifically, he argues:
"While Saunders concedes that these claims were (or could have been) raised at trial and/or on direct appeal, the trial court should nevertheless consider all of these claims in totality in determining whether Saunders's conviction and sentence of death accorded with constitutional mandates."
(Saunders's brief, at p. 75-76.) This is Saunders's entire argument on this issue.
This section of Saunders's brief fails to fully comply with the briefing requirements of Rule 28(a)(10), Ala. R. App. P. Rule 28(a)(10) states, in part, that the brief shall contain:
"An argument containing the contentions of the appellant/petitioner with respect to the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relied on."
"Failure to comply with Rule 28(a)(10) has been deemed a waiver of the issue presented."
*1173 C.B.D. v. State, 90 So.3d 227, 239 (Ala. Crim. App. 2011). Thus, Saunders has waived this argument on appeal.
Conclusion
For the foregoing reasons, we affirm the circuit court's summary dismissal of Saunders's postconviction petition attacking his convictions and sentence of death.
AFFIRMED.
Windom, P.J., and Burke, J., concur. Joiner, J., concurs in par and concurs in the result in part, with opinion. Kellum, J., not sitting.
JOINER, Judge, concurring in part and concurring in the result in part.
I concur with Part II and Part III of this Court's decision to affirm the circuit court's summary dismissal of Timothy Wade Saunders's Rule 32, Ala. R. Crim. P., petition for postconviction relief. As to Part I of this Court's opinion, however, I concur in the result.
In Part I of this Court's opinion, this Court correctly explains:
"Saunders argues that the circuit court's order of summary dismissal is legally defective because, he says, 'it is impossible without evidentiary development to render merits determinations of ineffective assistance of counsel claims that are predicated upon unpresented (sic) evidence.' "
249 So. 3d at 1159 (quoting Saunders's brief, p. 76).
In rejecting this argument, this Court quotes the following portion of the circuit court's order summarily dismissing Saunders's Rule 32 petition:
" 'This Court was able to observe Saunders's counsel at all phases of this case and counsels's performance did not fall below the objective standard of reasonableness gauged by prevailing professional standards. Petitioner's complaint of failure on the part of his counsel to present testimony or evidence is without merit, as it would have merely been repetitive. Everything complained of was presented to the jury in the guilt phase and penalty phase of the trial.' "
249 So. 3d at 1159 (emphasis added). This Court then holds that "a postconviction petition may be summarily dismissed on its merits." 249 So. 3d at 1159. Furthermore, this Court explains that, "because no evidentiary hearing was held, the circuit court was not required to make specific findings of fact on each claim raised in Saunders's petition." 249 So. 3d at 1161.
Although these holdings are generally correct, see Daniel v. State, 86 So.3d 405, 412 (Ala. Crim. App. 2011), when a circuit court summarily dismisses a claim of ineffective assistance of counsel on the merits based on that court's personal observations of counsel's conduct, we apply a different rule. Indeed, we have explained:
" ' "[I]f the circuit judge has personal knowledge of the actual facts underlying the allegations in the petition," ' he may summarily deny the petition, but he nonetheless must state his reasons for the denial in a written order, Monroe v. State, 659 So.2d 975, 977 (Ala. Crim. App. 1994) (quoting Sheats v. State, 556 So.2d 1094, 1095 (Ala. Crim. App. 1989) )."
Murph v. State, 853 So.2d 291, 293 (Ala. Crim. App. 2002) (emphasis added).
Because, as quoted in this Court's opinion, the circuit court's decision to summarily dismiss Saunders's claim of ineffective assistance of counsel as being without merit was based on conduct that the circuit court "was able to observe," the circuit court was, in fact, required to state its reasons for summarily dismissing that claim-even though the circuit court did not conduct an evidentiary hearing. To the extent that this Court's opinion implies a *1174 holding to the contrary, that holding is in conflict with caselaw from this Court.
Regardless, in my opinion, the circuit court's order provides a reason for summarily dismissing Saunders's claim based on the circuit court's personal observations; thus, I concur in the result as to Part I of this Court's opinion.

Rule 32.1, Ala. R. Crim. P., states: "Subject to the limitations of Rule 32.2, any defendant who has been convicted of a criminal offense may institute a proceeding in the court of original conviction to secure appropriate relief on the ground that: ... (f) The petitioner failed to appeal within the prescribed time from the conviction or sentence itself or from the dismissal or denial of a petition previously filed pursuant to this rule and that failure was without fault on the petitioner's part."

This Court in Symanowski v. State, 606 So.2d 171 (Ala. Crim. App. 1992), held that a circuit court has no jurisdiction to entertain a motion for an out-of-time appeal. The only method for obtaining an out-of-time appeal from the denial or dismissal of a postconviction petition is to file a postconviction petition pursuant to Rule 32.1(f), Ala. R. Crim. P.

The cases cited by Saunders in support of this claim are cases released before the United States Supreme Court's decision in Florida v. Nixon, 543 U.S. 175, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004), discussed infra. It appears that the Supreme Court's holding in Nixon would have an adverse impact on the rulings in the cases cited by Saunders. For example, in Brown v. Rice, 693 F.Supp. 381 (W.D.N.C. 1988), the federal court held: "When counsel concedes a client's guilt during the guilt-innocence phase of trial in spite of the client's earlier plea of not guilty and without the defendant's consent, counsel provides ineffective assistance of counsel regardless of the weight of evidence against the defendant or the wisdom of counsel's 'honest approach' strategy." 693 F.Supp. at 396.

In his brief to this Court, Saunders cites to other portions of his postconviction petition in support of this claim. However, this Court has held that each claim of ineffective assistance of counsel is a separate claim that must be independently pleaded. "A claim of ineffective assistance of counsel is a general allegation that often consists of numerous specific subcategories. Each subcategory is an independent claim that must be sufficiently pleaded." Coral v. State, 900 So.2d 1274, 1284 (Ala. Crim. App. 2004), overruled on other grounds, Ex parte Jenkins, 972 So.2d 159 (Ala. 2005). "[I]n considering whether [the appellant's] claims of ineffective assistance of counsel were sufficiently pleaded, the circuit court properly considered each claim individually." Mashburn v. State, 148 So.3d 1094, 1117 (Ala. Crim. App. 2013).

This Court has taken judicial notice of Saunders's records related to his direct appeal. See Hamm v. State, 425 So.2d 1372 (Ala. Crim. App. 1982).

The record shows that Saunders spent a portion of his childhood in the State of South Carolina.

The record of Saunders's trial contains a document entitled "Confidential Client Attorney Work Product." This 12-page document was introduced by the State at sentencing, and it contained a detailed account of Saunders's abusive and neglectful childhood. A great portion of this document was similar to the above alleged omitted evidence and was considered by the sentencing judge. (State's Exhibit 7.) (R. 1333.)

"[T]he scope of the duty to investigate mitigation evidence is substantially affected by the defendant's actions, statements, and instructions. As the Supreme Court explained in Strickland, the issue of what investigation decisions are reasonable 'depends critically' on the defendant's instructions...." Cummings v. Secretary, Dep't of Corrections, 588 F.3d 1331, 1357 (11th Cir. 2009).